# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-3710

KEITH ORUM and CHERIE ORUM,

*Petitioners-Appellants*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

_____

Appeal from the United States Tax Court.
No. 18317-02L—**Harry A. Haines**, *Judge*.

_____

ARGUED MAY 2, 2005—DECIDED JUNE 23, 2005

_____

Before BAUER, EASTERBROOK, and EVANS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*.    Keith Orum and Cherie Orum file joint tax returns. This litigation concerns their unpaid tax liabilities for 1998 and 1999. The amounts they owe (more than $85,000) for these tax years are un-contested. The Orums contend that the IRS must accept installment payments; the IRS believes that it is entitled to levy on the Orums' liquid assets and real property. The Tax Court sided with the Commissioner.

Before collecting unpaid taxes by levy, a form of self help, the Commissioner must notify a taxpayer and afford an opportunity for a hearing, at which the taxpayer may

present "(i) appropriate spousal defenses; (ii) challenges to the appropriateness of collection actions; and (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." 26 U.S.C. §6330(c)(2)(A). The Orums took advantage of this opportunity and proposed to pay on an installment plan. The Commissioner accepted the offer to remit $5,000 per month, starting on March 5, 2001. Over the next ten months, the Orums paid $25,000 rather than the required $50,000, and the Internal Revenue Service then demanded immediate payment in full. Another notice of intent to collect by levy followed, and in July 2002 the Orums asked for another hearing, proposing to resume installment payments. The IRS said no, for several reasons: (a) the first installment plan had failed; (b) the Orums were not current on their taxes for years after 1999 and were not remitting estimated tax (Keith Orum, a partner in Orum & Roth, a patent-law firm, must use the estimated-tax route, although Cherie Orum, a zookeeper, has income tax deducted from wages); (c) the Orums had failed to provide the Service with requested information, such as cash-flow data for Orum & Roth and copies of bank statements. Moreover, the Service concluded, the Orums' income and assets appeared sufficient to pay all taxes in full; the Service accordingly was unwilling to take less or to postpone payment, leaving the Treasury at risk of any financial reverses the family might suffer.

Judicial review of such decisions is deferential, see *Jones v. CIR*, 338 F.3d 463, 466 (5th Cir. 2003), and the Tax Court held that the Commissioner did not abuse his discretion in choosing immediate collection over another promise by taxpayers who had demonstrated the unreliability of their promises to pay.

The Orums maintain that installment payments are so much superior to seizing and selling property that the IRS

should be obliged to prefer them. They vow to do better if given a second chance. Such arguments are unavailing, because the Judicial Branch does not instruct the Executive Branch how to make executive decisions. See *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). The judicial task is to ensure that executive decisions conform to law, and this decision is lawful. The Orums concede that they owe the sums demanded, so 26 U.S.C. §6331(a) authorizes collection by levy. They do not contend that the Service used any improper criteria—for example, that it hounds Democrats while going easy on Republicans. The Commissioner gave notice, allowed a hearing, and made a reasoned decision, which is supported by substantial evidence—not only the collapse of the previous installment plan but also the Orums' failure to supply information and keep current on new taxes. See 26 U.S.C. §6159, 26 C.F.R. §301-7122-1.

It would not do the Treasury any good if taxpayers used the money owed for 2004 to pay taxes due for 1998, the money owed for 2005 to pay taxes for 1999, and so on. That would spawn more collection cycles yet leave a substantial unpaid balance. The Service's goal is to reduce and ultimately eliminate the entire tax debt, which can be done only if current taxes are paid while old tax debts are retired. Whether that goal is best achieved by levy rather than by allowing second chances is the sort of decision committed to executive officials. If there were any doubt, the Orums' conduct speaks volumes. They have pleaded for just a little more time. Through the demand for hearings, and review in two courts, they have obtained several additional years, but they *still* have not paid their back taxes and are accumulating new ones. A conclusion by the Service that the Orums have decided to prefer consumption over meeting their legal obligations would be hard to question.

This disposes of the parties' dispute about the means of collecting the Orums' 1999 taxes. The Tax Court held that

the Orums' delay in seeking a hearing disentitled them to any review with respect to the 1998 taxes. Because of that delay, the taxpayers received not a §6330 hearing but an "equivalent hearing" under 26 C.F.R. §301.6330-1(i)(1), and the outcome of an "equivalent hearing" is not subject to judicial review. 26 U.S.C. §6330(d). In this court the parties debate whether the Orums should have received a hearing under §6330 or an "equivalent hearing" under the regulation with respect to their 1998 taxes, but neither side thinks that the answer affects the propriety of the Commissioner's decision. If, as we have held, the Service is entitled to collect the 1999 taxes by levy, it may do the same for the 1998 taxes.

The parties, like the Tax Court itself, refer to the difference between statutory and equivalent hearings as "jurisdictional," because only the former is subject to review. Federal courts must ascertain subject-matter jurisdiction before taking up the merits. See *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94-95 (1998). This may be why the parties devoted so much attention to the difference between statutory and regulatory hearings. But the Tax Court, established under Article I rather than Article III, is not limited to constitutional "cases" or "controversies." *Our* jurisdiction is secure, because the taxpayers filed a timely notice of appeal. 26 U.S.C. §7482(a)(1). Whether the Orums did what was necessary to put their claim before the Tax Court is not the sort of "jurisdictional" question that Article III and *Steel Co.* require a federal court to decide as the first order of business (and to decide, indeed, whether the parties raise it or not).

Many a technical failing can be overlooked without transgressing the special doctrine that confines Article III courts to their subject-matter jurisdictions. See, e.g., *Scarborough v. Principi*, 541 U.S. 401 (2004); *Kontrick v. Ryan*, 540 U.S. 443, 453-55 (2004). A deadline in an administrative claims-processing rule differs from a limit on the subject-matter

jurisdiction of the Article III judiciary. When reviewing a district court's decision, a court of appeals may affirm on any ground supported by the record, see *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479 (1976), and 26 U.S.C. §7482(a) gives us the same authority vis-à-vis the Tax Court as we have with respect to district courts. We therefore need not decide when the Orums received the notice, whether they took too long to respond, and the other matters that affect the handling of their request for a second installment plan for their 1998 taxes. Whether they lose because they took too long to seek a §6330 hearing, or because the Commissioner did not abuse his discretion, is irrelevant.

The Orums' further arguments have been considered but do not require discussion.

AFFIRMED

A true Copy:

     Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*