T.C. Memo. 2005-264

UNITED STATES TAX COURT

JOSEPH G. DOSTAL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13090-04L.          Filed November 16, 2005.

<u>Robert M. Clegg</u>, for petitioner.

<u>Catherine L. Campbell</u>, for respondent.


MEMORANDUM OPINION

WHALEN, <u>Judge</u>:  Respondent issued a notice of
determination concerning collection action(s) under section
6320 and/or 6330 (notice of determination) sustaining a
levy on petitioner's property to collect unpaid taxes for
taxable years 2000 and 2001.  (Section references in this
opinion are to the Internal Revenue Code, as amended,

unless stated otherwise.)  The issue for decision is whether the Appeals officer who made the determination abused her discretion by rejecting an offer-in-compromise made on petitioner's behalf.

## Background

The facts set out herein are taken from the stipulation of facts filed by the parties and the exhibits referred to therein.  The stipulation of facts and the exhibits filed by the parties are incorporated herein. Petitioner resided in the State of Washington at the time his petition in this case was filed.

Petitioner filed his separate individual income tax return for taxable year 2000 on or about October 15, 2001, wherein he reported total tax of $137,465 and zero payments.  As of March 13, 2003, petitioner owed $143,165.96 with respect to taxable year 2000.

Petitioner filed his separate individual income tax return for taxable year 2001 on or about October 12, 2002. In that return, he reported total tax of $51,622 and Federal income tax withholding of $10,692, for balance owing of $40,930.  As of March 13, 2003, petitioner owed $45,675.28 with respect to taxable year 2001.  Petitioner's tax returns for taxable years 2000, 2001, 2002, and 2003 are summarized in the appendix hereto.

On or about March 18, 2003, respondent sent to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 which stated that a notice of Federal tax lien had been filed with respect to taxable years 2000 and 2001 in the amounts of $143,165.96 and $45,675.28, respectively.

On the following day, March 19, 2003, respondent sent to petitioner a final notice, Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to the amount petitioner owed for taxable year 2000. On the same date, respondent sent a similar notice with respect to the amount petitioner owed for taxable year 2001.

In response, petitioner timely filed a request for a collection due process hearing. Petitioner's request for a hearing indicates his disagreement with respondent's "Notice of Levy/Seizure". The hearing request does not indicate petitioner's disagreement with the notice of Federal tax lien. Petitioner's hearing request sets out the following reasons for his disagreement with the notice of levy/seizure:

Notice of Levy/Seizure

1. The tax payer [sic], Mr. Joseph Dostal, files this Collection Due Process Hearing based on the grounds that he anticipates an Offer in Compromise disputing the collectability of the herein mentioned tax but does not dispute the amount of liability;

2. Tax Payer [sic] is currently experiencing financial hardship and a levy it is felt would constitute a substantial hardship for tax payer [sic] and his family;

3. Upon further examination, taxpayer should be placed in "non-collectability status" during the pendency of this appeal.

As contemplated in his request for hearing, petitioner submitted an offer-in-compromise approximately 4 months later on August 20, 2003. Petitioner offered to pay $20,000 to compromise the tax liabilities, plus any interest, penalties, additions to tax, and additional amounts required by law with respect to his individual income tax for tax years "2000, 2001 & 2002". As the reason for submitting the offer-in-compromise, petitioner checked the box entitled "Effective Tax Administration", which states as follows:

"I owe this amount and have sufficient assets to pay the full amount, but due to my exceptional circumstances, requiring full payment would cause an economic hardship or would be unfair and inequitable." You must include a complete Collection Information Statement, Form 433-A and/or Form 433-B and complete Item 9.

Contrary to petitioner's hearing request, petitioner's offer-in-compromise did not raise doubt as to collectibility as the basis of the offer.

Attached to petitioner's offer-in-compromise is a Form 433B, Collection Information Statement For Businesses, for J. Dostal Investments, Inc. That form reports that J. Dostal Investments, Inc., had business assets of de minimis value, consisting of a computer and office furniture, a checking account, and two brokerage accounts. Section 7 of the form lists the following income and expenses:

| Total Income Source | Gross Monthly | Total Expenses Expense Items | Actual Monthly |
|---|---|---|---|
| 19. Gross receipts | $295,498 | 27. Materials purchased | |
| 20. Gross rental income | | 28. Inventory purchased | |
| 21. Interest | | 29. Gross wages & salaries | $76,770 |
| 22. Dividends | | 30. Rent | 6,300 |
| Other income (specify in lines 23-25) | | 31. Supplies | |
| | | 32. Utilities/telephone | |
| 23. | | 33. Vehicle gasoline/oil | |
| 24. | | 34. Repairs & maintenance | |
| 25. | | 35. Insurance | |
| (Add lines 19 through 25) | | 36. Current taxes | 13,121 |
| | | Other expenses (include installment pay-ments, specify in lines 37-38) | |
| 26. TOTAL INCOME | 295,498 | | |
| | | 37. Statement 1, depreciation | 26,447 |
| | | 38. Pension, interest expense | 12,315 |
| | | (Add lines 27 through 38) | |
| | | 39. TOTAL EXPENSES | 134,953 |

Section 7 of Form 433-B calls for "monthly" income and expenses. However, the income and expenses set forth on Form 433-B appear to be computed on an annual basis. The amounts set out on the form correlate with the income and expenses reported on the income tax return filed on behalf

of "J Dostal, Investment [sic], Inc." on Form 1120S, U.S.
Income Tax Return for an S Corporation, for taxable year
2002. That tax return reports gross receipts of $295,498
and total deductions of $134,953 for ordinary income of
$160,545.

Also attached to petitioner's offer-in-compromise is
a Form 433-A, Collection Information Statement for Wage
Earners and Self-Employed Individuals, for petitioner and
his wife. That form lists the following monthly income and
expenses for the couple:

| Total Income<br>Source | Gross<br>Monthly | Total Expenses<br>Expense Items | Actual<br>Monthly |
|---|---|---|---|
| 24. Wages (yourself) | $5,400 | 35. Food, clothing and misc. | $800 |
| 25. Wages (spouse) | | 36. Housing and utilities | 1,942 |
| 26. Interest-dividends | | 37. Transportation | 990 |
| 27. Net income from business | | 38. Health care | 560 |
| 28. Net rental income | | 39. Taxes (income and FICA) | |
| 29. Pension/Social Security (yourself) | | 40. Court ordered payments | |
| 30. Pension/Social Security (spouse) | | 41. Child/dependent care | |
| 31. Child support (Spouse) | | 42. Life insurance | |
| 32. Alimony | | 43. Other secured debt | 500 |
| 33. Other | 10,000 | 44. Other expenses | 600 |
| 34. Total income | 15,400 | 45. Total living expenses | 5,972 |

Thus, the Form 433-A petitioner filed suggests that his
income exceeds living expenses by $9,428 per month before
income taxes. Form 433-A also lists the following assets
owned by petitioner and his wife:

```
Checking accounts
 Checking account (********1731)        $825
 Checking account (******63)             20        $845

Brokerage accounts
 Brokerage account (******31CK)        9,000
 Brokerage account (******07)            541      9,541

Investments
 National securities SEP IRA          60,000
 US Bank SEP IRA                      14,000     74,000

Automobiles
 Lexus, 2000                          23,000
 Loan                                -28,000
 Kia, 1998                             2,000
 Loan                                 -3,000
 Ford truck, 1968                      1,500
                                                 -4,500
Real estate
 Arlington, VA residence             500,000
 Loan                               -450,000     25,000

Personal assets
 Furniture/personal effects           8,900
 Jewelry                                500      9,400

Business assets
 Office furniture                                2,000
```

Item 9 of the offer-in-compromise asks the taxpayer to set forth the reasons the offer-in-compromise is requested. In response, petitioner's offer-in-compromise refers to a cover letter written by petitioner's attorney. In that letter, petitioner's attorney states as follows:

> Mr. & Mrs. Dostal do not dispute the amount owed and admittedly have sufficient assets and means to pay this amount, within the short-term, but due to several mitigating factors, and their need for these funds to be used for his and his family's needs, it would be and would indeed cause a sufficient economic hardship for my clients and their family members.

Petitioner's attorney repeats his contention that petitioner cannot part with the funds necessary to make full payment because those funds will be needed, after his retirement, to satisfy his medical and living expenses and to support him, his wife, and his children. Petitioner's attorney states as follows:

> given Mr. Dostal's age and retirement needs, future and current medical and living costs, and projected retirement needs, he is required to contribute a certain amount to his retirement accounts to insure a modest living standard for himself, his wife, and children.

Petitioner's attorney summarizes petitioner's position as follows:

> Considering Mr. Dostal's age, his future financial and health needs, his spouse and children's future financial needs, it is clear that any and all savings, retirement savings and the like, will be needed, and spent toward their support, and the future support of their children. The amount of taxes owed, the Dostal's [sic] present and future financial needs, Mr. Dostal's few remaining years or months of employment remaining [sic], and their family support needs, warrant approval of this Offer in Compromise.

Petitioner's attorney emphasizes that petitioner had incurred unsecured debt in the aggregate amount of approximately $203,000 and had monthly medical expenses of approximately $1,000, consisting of medical insurance

payments, copays, and costs of prescription medications.
Petitioner's attorney suggests that petitioner's total
monthly expenses are as follows:

| | |
|---|---|
| Health insurance premium | $560.00 |
| Uninsured medical expenses | 600.00 |
| Unsecured debt finance charge | 2,368.33 |
| ($203,000 at 14 percent) | |
| Other expenses | 3,000.00 |
| Total expenses | 6,528.33 |

Petitioner's attorney does not reconcile the above monthly
expenses with those set forth on Form 433-A attached to
the offer-in-compromise, which shows total monthly living
expenses of $5,972.

Petitioner was approximately 63 years of age when the
offer-in-compromise was submitted on his behalf.  He was
self-employed as a stock broker.  He operated his business
through a subchapter S corporation, J Dostal Investments,
Inc., often referred to as J Dostal Investment, Inc.
Petitioner's wife, Teresa Dostal, formerly Teresa S.
Fisher, was approximately 35 years of age at the time the
offer-in-compromise was submitted.  Ms. Dostal was vice
president of J Dostal Investments, Inc., and owned
50 percent of that entity.  She had a son, Adam, and a
daughter, Natalie, who were 11 and 9 years of age,
respectively, when the offer-in-compromise was submitted.

In due course after submission of petitioner's offer-in-compromise, the Appeals officer wrote to petitioner stating that she had been assigned petitioner's hearing. In her letter, the Appeals officer noted that petitioner had submitted an offer-in-compromise, and she said that the offer would be "considered as a part of your collection due process hearing". In that connection, the Appeals officer stated as follows:

> I have reviewed your offer and the financial documentation submitted by your representative. It does not appear based on upon [sic] the provisions, conditions and examples provided in the Internal Revenue Regulations section 301.7122-1(c)(3) and in the Internal Revenue Manual section 5.8.22.2(4), that you qualify for an Effective Tax Administration Offer in Compromise due to economic hardship. I will be happy to discuss other alternative collection options with you, such as an installment agreement.

Petitioner's attorney met with the Appeals officer in her office on April 20, 2004. Following that meeting, petitioner's attorney sent the Appeals officer a letter dated May 5, 2004, transmitting various documents which the Appeals officer had requested. Among the documents were statements from two brokerage firms, National Securities Corp. and Piper Jaffray, which show that as of March 31, 2004, petitioner and his wife had brokerage accounts valued at $179,836.67, as follows:

3/31/04

| | |
|---|---:|
| National Securities Corp., acct. for Teresa S. Fisher | $2,145.00 |
| National Securities Corp., acct. for Joe Dostal | 139,580.70 |
| Piper Jaffray, acct. for Joe Dostal | 3,484.70 |
| Piper Jaffray, retirement acct. for Joe G. Dostal | 34,541.63 |
| Piper Jaffray, acct. for Teresa S. Fisher | 84.64 |
| | 179,836.67 |

In his letter of May 5, 2004, petitioner's attorney, among other things, disclosed to the Appeals officer that "Mr. Dostal has a tax liability for 2003, of roughly $70,000.00 and intends to pay this with funds on hand; namely, funds from his retirement account(s)."

At that time, petitioner had requested the first of two extensions to file his return for 2003. Petitioner's return would not be filed until on or about October 14, 2004, more than 5 months later. As filed, the return reported total tax of $11,575 and Federal income tax withholding of $6,415, leaving an amount due of $5,160. See appendix. The record does not explain why petitioner's attorney advised the Appeals officer that petitioner's tax liability for 2003 was $70,000.

Shortly thereafter, during a telephone conference, the Appeals officer advised petitioner's attorney that she could not consider petitioner's offer-in-compromise, as a collection alternative because petitioner had incurred unpaid tax liabilities for tax year 2003. The Appeals officer gave petitioner's attorney a short time to request

another collection alternative.  In response, petitioner's attorney proposed that petitioner enter into an installment agreement.  The Appeals officer responded that certain conditions must be met before she would consider an installment agreement.  These included "payment in full for the amount determined to be owed for the tax year 2003, including the estimated tax penalty computed to be due", a substantial payment of petitioner's tax liability for taxable years 2000 and 2001, and submission of copies of the Forms W-2, Wage and Tax Statement, for petitioner and his wife for taxable year 2003.  Petitioner's attorney notified the Appeals officer that petitioner could not meet the specified conditions for entry into an installment agreement.

In due course, the Appeals officer issued her determination that "the Notice of Intent to Levy and the proposed collection action was appropriate."  In an attachment to the notice of determination, the Appeals officer summarized her discussions with petitioner's attorney, the most significant of which are summarized as follows:

During our conference, we advised that you did not qualify for an ETA offer [an offer in compromise based upon Effective Tax Administration] because you had not demonstrated that you had an undue hardship as defined under the Code of Federal Regulations Section 6343-1. We advised that you had the ability to full pay your tax liability and we proposed that your representative ask you to consider an installment agreement and/or liquidation of your retirement accounts in order to satisfy the tax liability. We asked your representative to provide us with some additional documentation which included a draft of your Form 1040 for 2003. We advised that you could not owe a balance due if you still wished to pursue an offer.

On May 10, 2004 we received some additional documentation from your representative. In his cover letter, your representative advised us that you were going to owe $70,000.00 for the tax year 2003 and intended to pay the amount due with funds from your retirement accounts.

On May 19, 2004 and May 25, 2004, we held telephone conferences with your representative and advised that we could no longer consider an offer because you had not complied with your payment requirements and had incurred another liability while your offer was being considered. We noted that the current balance in your retirement accounts was approximately $178,000.00. Your representative asked if you could enter into an installment agreement. We advised that we would consider an installment agreement if you paid your 2003 tax year in full, made a substantial payment towards your tax liability for 2000 and 2001, and provided some missing documentation in order to determine the precise amount of your monthly installment payment. * * *

Your representative advised that he would discuss the proposal with you. We asked to be contacted by June 1, 2001 [sic]. On May 26, 2004 we sent and faxed a letter to your representative outlining the terms under which we could consider an installment agreement. On June 1, 2004, your

representative contacted us and advised that you could not meet the terms of our proposal. He asked us to issue a notice of determination to you.

## Discussion

Before a levy can be made on any property or right to property, the Commissioner is obligated to provide the taxpayer with notice of the Commissioner's intent to levy and notice of the taxpayer's right to a fair hearing before an impartial officer of the Appeals Office. Secs. 6330(a) and (b) and 6331(d). If the taxpayer requests a section 6330 hearing, he or she may raise in that hearing any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of the collection actions, and "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Sec. 6330(c)(2)(A). A determination is then made which takes into consideration those issues, the verification that the requirements of applicable law and administrative procedures have been met, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3).

In this case, petitioner's position is that respondent abused his discretion in the subject notice of determination, which sustained the proposed collection action for 2000 and 2001, because respondent refused to process petitioner's offer-in-compromise. Thus, the only issue in this case involves a collection alternative, petitioner's offer-in-compromise. We review the determination for an abuse of discretion because the underlying tax liability is not at issue. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Nicklaus v. Commissioner, 117 T.C. 117, 120 (2001).

Section 7122(a) authorizes the Secretary to compromise any civil case arising under the internal revenue laws. The regulations set forth three grounds for the compromise of a liability: (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs.; see sec. 7122(c)(1). Neither doubt as to liability nor doubt as to collectibility is at issue in the instant case.

The Secretary may compromise a liability to promote "effective tax administration" when: (1) Collection of the full liability would cause the taxpayer economic hardship within the meaning of section 301.6343-1, Proced. & Admin.

Regs.; or (2) exceptional circumstances exist such that collection of the full liability would be detrimental to voluntary compliance by taxpayers; and (3) compromise of the liability will not undermine compliance by taxpayers with tax laws. Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.; see 2 Administration, Internal Revenue Service (CCH), section 5.8.11.2, at 16,385-3 (taxpayer's liability may be eligible for compromise to promote effective tax administration if the taxpayer is not eligible for compromise based on doubt as to liability or doubt as to collectibility, and taxpayer has exceptional circumstances to merit the offer). Under section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., a levy creates economic hardship "if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses."

Petitioner contends for three reasons that respondent abused his discretion by refusing to accept petitioner's offer-in-compromise. First, petitioner contends that the Appeals officer "was without basis in determining that Mr. Dostal was in substantial non-compliance." As we understand petitioner's brief, he complains that the Appeals officer "declined to consider" his offer-in-compromise because of petitioner's "noncompliance with

tax filings."  Petitioner emphasizes that, contrary to the determination of the Appeals officer, he "has filed all of his prior tax returns, including a validly filed automatic extension for his 2003 tax return and the 2003 return itself."  Petitioner acknowledges that his attorney had thought that his tax liability for the year was $70,000.  Petitioner notes that, in fact, the liability "was actually much lower and taxpayer has paid the liability."

Second, petitioner asserts that the Appeals officer abused her discretion because she "summarily rejected" the offer-in-compromise "and demanded the taxpayer enter into an installment agreement."  According to petitioner the Appeals officer took this action "without making the required financial analysis."  Petitioner contends that the Appeals officer "rejected this offer outright because the taxpayer's OIC (offer-in-compromise) showed the ability to pay the taxes in full."  Petitioner complains that

> the IRS failed to even consider what affect [sic]
> on the taxpayer, and his family, would be [sic]
> by him using his meager retirement account to
> satisfy the tax obligation, and insisted that the
> 2003 obligation be cured, and that a sub-stantial
> down payment be made on the 2000 and 2001 tax
> liability amounting to $139,000.00 as  of June 1,
> 2004.

Petitioner also complains that the Appeals officer failed to take into account the "schedules of national and local

allowances", referred to in section 7122(c)(2), and failed to determine, based upon the facts and circumstances of this case, whether it was appropriate to use those schedules.

For his last reason, petitioner argues that "the financial information clearly showed that the IRS' settlement demands would be an undue hardship on the taxpayer and his family, and basically force them into the streets."  In effect, petitioner is arguing that collection of the full liability for tax years 2000 and 2001 would cause petitioner and his family economic hardship within the meaning of section 301.6343-1, Proced. & Admin. Regs. Thus, it appears that petitioner is relying on section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., to support his contention that respondent should have accepted his offer-in-compromise.  Petitioner has identified no "compelling public policy or equity considerations", applicable to his tax liability for taxable years 2000 and 2001, that would provide a basis to apply section 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

We disagree with each of petitioner's points and, for the reasons set out below, we find that the determination to proceed with collection of petitioner's tax for 2000 and 2001 was not an abuse of respondent's discretion.

First, contrary to petitioner's assertion, the Appeals officer did not suspend her consideration of the offer-in-compromise because petitioner had failed to meet his filing requirements.  Rather, the Appeals officer took that action after petitioner's attorney disclosed that petitioner's unpaid tax liability for 2003 was $70,000.  The Appeals officer had no reason to doubt this disclosure and no way of knowing that petitioner's return, when it was filed approximately 5 months later, would report an unpaid tax liability of $5,160.  In response to that disclosure, the Appeals officer advised petitioner's attorney that she could no longer consider the offer-in-compromise because petitioner had not complied with the "payment requirements" for his 2003 return.

In this case, we cannot fault the Appeals officer for her concern about the fact that petitioner had, according to his attorney, allowed a substantial additional tax liability to accrue for 2003 without payment.  For example, in Orum v. Commissioner, 412 F.3d 819, 821 (7th Cir. 2005), affg. 123 T.C. 1 (2004), the court stated as follows:

> It would not do the Treasury any good if taxpayers used the money owed for 2004 to pay taxes due for 1998, the money owned for 2005 to pay taxes for 1999, and so on.  That would spawn more collection cycles yet leave a substantial unpaid balance.  The Service's goal is to reduce and ultimately eliminate the entire tax debt,

> which can be done only if current taxes are paid while old tax debts are retired. Whether that goal is best achieved by levy rather than by allowing second chances is the sort of decision committed to executive officials. * * *

As the court noted in the above case, a taxpayer's failure to keep current on his tax payments suggests that the taxpayer had decided "to prefer consumption over meeting [his] legal obligations." Id.

Second, petitioner's assertion that the Appeals officer "summarily rejected" petitioner's offer-in-compromise is contradicted by the record. The stipulation of facts filed by the parties states that the Appeals officer "reviewed the offer-in-compromise and supporting information which had been submitted to the Memphis Service Center." Furthermore, the Appeals officer's first letter to petitioner states as follows:

> I have reviewed your offer and the financial documentation submitted by your representative. It does not appear, based on upon [sic] the provisions, conditions, and examples provided in the Internal Revenue Regulations section 301.7122-1(c)(3) and the Internal Revenue Manual section 5.8.22.2(4), that you qualify for an effective tax administration offer in compromise due to economic hardship.

According to the attachment to the notice of determination, the Appeals officer also advised petitioner's attorney during their conference that

petitioner had not demonstrated undue hardship as defined by section 301.6343-1(b)(4)(i), Proced. & Admin. Regs. At that conference, the Appeals officer suggested that petitioner consider "an installment agreement and/or liquidation of your retirement accounts in order to satisfy the tax liability."  The Appeals officer also sent petitioner and his attorney a letter setting forth certain conditions, such as full payment for petitioner's 2003 tax liability, to continue consideration of collection alternatives.  Our review of the record fails to show any basis for the assertion that the Appeals officer "summarily rejected" petitioner's offer-in-compromise.

Finally, we do not agree with petitioner's assertion that collection of the full tax liability for taxable years 2000 and 2001 would cause petitioner and his family economic hardship within the meaning of section 301.6343-1, Proced. & Admin. Regs.  The financial information petitioner submitted with his offer-in-compromise demonstrates that petitioner had a robust earning capacity through his stock brokerage business.  The Form 433-A submitted with petitioner's offer-in-compromise suggests that his income exceeded living expenses by $9,428 per month before income taxes.  Certainly, monthly income in

that amount is more than enough to finance the payment of petitioner's unpaid taxes for 2000 and 2001.

Petitioner's contention that he faced economic hardship from collection of his full tax liability for taxable years 2000 and 2001 appears to be based upon the assertion that he planned to retire from his stock brokerage business. In that event, as we understand petitioner's contention, he would have no business income, and collection of his full tax liability for 2000 and 2001 would deprive him of those assets and a means of support for himself and his family. We note that petitioner's retirement is not required for health reasons or any external cause. Petitioner's complaint boils down to the fact that if collection of his full tax liability for taxable years 2000 and 2001 is required, then petitioner will have to delay his retirement plans. We agree with the Appeals officer that petitioner has not shown that requiring full payment would cause economic hardship.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

APPENDIX

| Taxable Year | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|
| 7 Wages | -- | $27,000 | $48,600 | $16,200 |
| 8 Taxable interest | $401 | 421 | 143 | 34 |
| Tax-exempt interest | | | | |
| 9 Ordinary dividends | -- | 150 | -- | 1 |
| 10 Taxable refunds, etc. | -- | -- | -- | -- |
| 11 Alimony received | -- | -- | -- | -- |
| 12 Business income or (loss) | 140,997 | -- | -- | -- |
| 13 Capital gain or (loss) | 279,089 | -1,500 | -1,500 | -1,500 |
| 14 Other gains or (losses) | -- | -36,535 | -- | -- |
| 15 Total IRA distributions | 53,400 | 110,035 | 29,000 | -- |
| 16 Total pensions and annuities | -- | -- | -- | -- |
| 17 Rental real estate, royalties, partnerships, S corps., etc. | -- | 120,954 | 78,408 | 96,881 |
| 18 Farm income or (loss) | -- | -- | -- | -- |
| 19 Unemployment compensation | -- | -- | -- | -- |
| 20 Social Security benefits | -- | -- | -- | -- |
| 21 Other income | | | | |
| 22 Total income | 473,887 | 220,525 | 154,651 | 111,616 |
| 23 IRA deduction | -- | -- | -- | -- |
| 24 Student loan interest deduction | -- | -- | -- | -- |
| 25 Medical savings account deduction | -- | -- | -- | -- |
| 26 Moving expenses | -- | -- | -- | -- |
| 27 One-half of self-employment tax | 8,501 | -- | -- | -- |
| 28 Self-employment health ins. deduction | 2,784 | -- | -- | 1,776 |
| 29 Self-employed SEP, SIMPLE, and qualified plans | 25,500 | -- | -- | 6,480 |
| 30 Penalty on early withdrawal of savings | -- | -- | 1,243 | -- |
| 31 Alimony paid | | | | |
| 32 Total adjustments | 36,785 | -- | 1,243 | 8,256 |
| 33 Adjusted gross income | 437,102 | 220,525 | 153,408 | 103,360 |
| Itemized deductions | 84,239 | 52,748 | 82,016 | 38,382 |
| Exemptions | -- | -- | 540 | 6,100 |
| Taxable income | 352,863 | 167,777 | 70,852 | 58,878 |
| Tax | 120,464 | 51,622 | 16,468 | 11,575 |
| Self-employment tax | 17,001 | | | |
| Total tax | 137,465 | 51,622 | 16,468 | 11,575 |
| Federal income tax withheld from Forms W-2 and 1099 | -- | 10,692 | 19,246 | 6,415 |
| Estimated payments | -- | -- | -- | - |
| Total payments | -- | 10,692 | 19,246 | 6,415 |
| Amount owed, not including estimated tax penalty | 137,728 | 40,930 | -- | 5,160 |
| Amount overpaid | -- | -- | -2,778 | -- |