T.C. Memo. 2007-162


UNITED STATES TAX COURT


OLIVER W. AND HARRIET S. WILLIAMS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3000-06L.              Filed June 21, 2007.


Oliver W. Williams, pro se.

Gerard Mackey, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  Petitioners filed a petition with this Court in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) for 1995, 1996, 1997, 1998, 1999, 2000, 2001, and

2002 (years at issue).[1]  Pursuant to section 6330(d), petitioners seek review of respondent's determination.  The issues for decision are:  (1) Whether petitioners have a right to a judicial review of respondent's notice of determination sustaining a Federal tax lien which covers the same tax year as a previous Federal tax lien (in which petitioners failed to request an administrative hearing) but concerns a different type of unpaid tax for that year; and (2) whether petitioners are entitled to any relief from respondent's determination that collection may proceed.

FINDINGS OF FACT

A.    Background

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits are incorporated herein by this reference.  Petitioners resided in Ossining, New York, when they filed this petition.  Petitioners are Oliver W. Williams, an attorney, and his wife, Harriet S. Williams, a psychologist. Petitioners failed to pay Federal income tax liabilities shown on their returns for the years at issue.

B.    Petitioners' Installment Agreement

In June 1997, petitioners and respondent entered into an installment agreement in which petitioners agreed to pay their

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.  Amounts are rounded to the nearest dollar.

1995 income tax liability. Respondent's certificate of official record for 1995 (1995 record) indicated petitioners were credited with making 22 monthly payments of $375 from June 23, 1997, through March 24, 1999, a $375 payment on June 29, 1999, 6 monthly payments of $340 from June 2, 2000 through November 22, 2000, and a $340 payment on February 20, 2001, pursuant to the installment agreement. Petitioners did not fulfill the terms of the installment agreement, and an income tax liability for 1995 remains unpaid.[2]

C.    Notice of Federal Tax Lien Filing of May 9, 2003

On June 19, 2001, petitioners filed with their 1998 income tax return Form 5329, Additional Taxes Attributable to IRAs, Other Qualified Retirement Plans, Annuities, Modified Endowment Contracts, and MSAs. Petitioners failed to pay the 10-percent additional tax on the early distribution as required under section 72(t). On October 15, 2001, respondent assessed the 10-percent additional tax liability including penalties and interest for 1998.[3] On May 6, 2003, respondent filed a notice of Federal tax lien with respect to the 10-percent additional tax liability and on May 9, 2003, mailed petitioners a Notice of Federal Tax

---

[2] The 1995 record also indicated that on May 1, 2000, an overpayment credit of $175 from 1994 was applied to petitioners' 1995 tax liability.

[3] Respondent did not explain why the 10-percent additional tax was assessed separately from the rest of the tax shown on the return.

Lien Filing and Notice of Your Right to a Hearing Under IRC 6320 (first notice of Federal tax lien). The first notice of Federal tax lien indicated the "Type of Tax" was Form 5329 and the balance owing was $6,592. The U.S. Postal Service returned the first notice of Federal tax lien to respondent unclaimed. Petitioners did not submit to respondent a request for an administrative hearing with respect to the first notice of Federal tax lien. Respondent's certificate of official record for 1998 (1998 record) indicated that on April 4, 2005, an overpayment credit of $4,664 from petitioners' 2004 tax year was applied to the balance owing in 1998; i.e., the 10-percent additional tax liability.[4] The balance owing as indicated on the first notice of Federal tax lien was not reduced to reflect the $4,664 overpayment credit.

D. Offer-in-Compromise

On July 26, 2004, respondent received from petitioners a Form 656, Offer-in-Compromise, offering $2,500 to compromise their outstanding tax liabilities for the years at issue with a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Petitioners failed to provide

---

[4] Respondent produced two certificates of official record for 1998. One record pertains to the Form 5329 10-percent additional tax liability and the other record pertains to petitioners' underpayment of individual income tax for 1998 other than the 10-percent additional tax. For purposes of this case, the term "1998 record" refers to the Form 5329 10-percent additional tax liability.

documentation verifying the monthly expenses claimed on Form 433-A. Pursuant to petitioners' requests, respondent, on several occasions, extended the time to submit the substantiating documentation. On April 20, 2005, respondent notified petitioners that if they failed to provide the requested documentation by April 30, 2005, the offer-in-compromise would be rejected. Petitioners failed to provide the documentation by April 30, 2005, and respondent returned petitioners' offer-in-compromise for failure to provide verification of claimed expenses.[5]

E. Notice of Federal Tax Lien Filing of May 13, 2005

Petitioners failed to pay their income tax liabilities for the years at issue after respondent gave notice and demanded payment. On May 12, 2005, respondent filed a notice of Federal tax lien with respect to the years at issue and on May 13, 2005, mailed petitioners a Notice of Federal Tax Lien Filing and Notice of Your Right to a Hearing Under IRC 6320 (second notice of Federal tax lien).[6] The second notice of Federal tax lien indicated the "Type of Tax" owing was Form 1040, U.S. Individual Income Tax Return, and listed unpaid balances of $5,713, $15,082, $19,024, $37,485, $21,294, $13,124, $16,990, and $12,580, for

---

[5] The Form 656 was returned on May 25, 2005.

[6] Though the second notice in point of time, it was the first notice as to all years except 1998.

1995, 1996, 1997, 1998,[7] 1999, 2000, 2001, and 2002, respectively.

F.   Administrative Hearing

On May 23, 2005, petitioners submitted Form 12153, Request for a Collection Due Process Hearing, in which they claimed the second notice of Federal tax lien should not have been filed because of representations made by respondent's revenue officer that a lien would not be filed while they were negotiating an offer-in-compromise.

On June 24, 2005, petitioners mailed a letter to respondent, in which they asserted that the tax liability indicated in the second notice of Federal tax lien failed to reflect the $4,664 overpayment credit from 2004.[8]  On July 21, 2003, respondent's Appeals Office mailed petitioners a letter acknowledging receipt of petitioners' request for an administrative hearing.

On October 27, 2005, a face-to-face conference was held between Settlement Officer Thomas Knauss and Oliver W. Williams (petitioner).  During the hearing, petitioner asserted that the offer-in-compromise should not have been returned because he provided all requested documentation, the second notice of

---

[7] The unpaid balance for 1998 as indicated on the second notice of Federal tax lien did not include the balance owing in the first notice of Federal tax lien.

[8] The $4,664 overpayment credit was applied to the 1998 Form 5329 10-percent additional tax liability reflected in the first notice of Federal tax lien.

Federal tax lien was prematurely filed because petitioners were negotiating an offer-in-compromise, and the second notice of Federal tax lien did not reflect that the 2004 overpayment credit of $4,664 was applied to reduce the balance owing.

In response, Mr. Knauss informed petitioner that he could not reinstate a returned offer-in-compromise, an offer-in-compromise does not prohibit the filing of a notice of Federal tax lien, and the amount shown on a notice of Federal tax lien is not reduced when a taxpayer makes a subsequent payment.

At the hearing, petitioner proposed an offer-in-compromise or an installment agreement as a collection alternative. Mr. Knauss and petitioner agreed that petitioners would provide a completed Form 433-A to Mr. Knauss by November 28, 2005, so that Mr. Knauss could determine which collection alternative would suit petitioners' financial situation.

On November 23, 2005, petitioners faxed a letter to Mr. Knauss requesting an extension until December 15, 2005, to provide the completed Form 433-A. Petitioners failed to provide the Form 433-A by December 15, 2005, or anytime thereafter.

On January 12, 2006, respondent's Appeals Office issued petitioners a notice of determination sustaining the filing of the second notice of Federal tax lien and finding:

> The taxpayers have been given multiple opportunities to resolve these liabilities via less intrusive means but have failed to do so in a timely manner. The filing of the NFTL is the only means of securing the government's

interest in the taxpayers' property and potentially collecting the unpaid liability.

In response to the notice of determination, petitioners timely filed their petition with this Court on February 9, 2006.

OPINION

## I. Notices of Federal Tax Lien

The record indicates there were two separate notices of Federal tax lien filed with respect to income tax liabilities in 1998. The first notice of Federal tax lien was filed with respect to the 1998 Form 5329 10-percent additional tax liability, and the second notice of Federal tax lien was filed with respect to the income tax liability for 1998 other than the 10-percent additional tax. The second notice of Federal tax lien did not include the 1998 Form 5329 10-percent additional income tax liability.

Petitioners concede this Court lacks jurisdiction over the unpaid 1998 10-percent additional tax liability because they did not timely submit a request for an administrative hearing with respect to the first notice of Federal tax lien. See sec. 6320(b)(1); Orum v. Commissioner, 123 T.C. 1, 7-8 (2004), affd. 412 F.2d 819 (7th Cir. 2005).

Petitioners timely submitted a request for an administrative hearing with respect to the second notice of Federal tax lien. See sec. 6320(b)(1). Although the first and second notices of Federal tax lien include a 1998 income tax liability, they cover

different types of unpaid taxes.  See sec. 6320(b)(2); sec.
301.6320-1(b)(1), Proced. & Admin. Regs.  Therefore, this Court
has jurisdiction to review respondent's notice of determination
with respect to 1998 unpaid tax (and the other years at issue) in
the second notice of Federal tax lien.

II.  Standard of Review

Where the validity of the underlying tax liability is
properly at issue, the Court will review the matter de novo.
Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v.
Commissioner, 114 T.C. 176, 181 (2000).[9]  The underlying tax
liability is properly at issue if the taxpayer did not receive a
statutory notice of deficiency or otherwise have an opportunity
to dispute the tax liability.  Sec. 6330(c)(2)(B); see Behling v.
Commissioner, 118 T.C. 572, 576-577 (2002).

Where the validity of the underlying tax liability is not
properly at issue, the Court will review the Commissioner's
determination for abuse of discretion.  Sego v. Commissioner,
supra at 610; Goza v. Commissioner, supra at 181.  The abuse of
discretion standard requires the Court to decide whether the
Commissioner's determination was arbitrary, capricious, or
without sound basis in fact or law.  Woodral v. Commissioner, 112

---

[9] The term "underlying tax liability" under sec.
6330(c)(2)(B) includes amounts self-assessed under sec. 6201(a),
together with penalties and interest.  Sec. 6201(a)(1);
Montgomery v. Commissioner, 122 T.C. 1, 9 (2004); sec.
301.6201-1, Proced. & Admin. Regs.

T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166;
Fowler v. Commissioner, T.C. Memo. 2004-163.

III. Payments

Petitioners contend the tax liabilities listed in the second
notice of Federal tax lien did not reflect the installment
agreement payments and the 2004 overpayment credit.[10]  Because
the validity of the underlying tax liabilities is properly at
issue, the Court reviews respondent's determinations de novo.
See Landry v. Commissioner, 116 T.C. 60, 62 (2001).

The 1995 record indicated petitioners were credited with
making 23 payments of $375 and 7 payments of $340 pursuant to
their installment agreement.  The 1995 record reflected all
payments received by respondent for petitioners' income tax
liability.  The balance that remained is consistent with the
amounts respondent is attempting to collect as stated in the
second notice of Federal tax lien for 1995.  Therefore, the Court
finds that the second notice of Federal tax lien properly
reflected the installment agreement payments.

IV.  Withdrawal of Notice of Federal Tax Lien

Petitioners also contend that respondent abused his
discretion in sustaining the second notice of Federal tax lien

---

[10] The 1998 record indicated that the 2004 overpayment
credit of $4,664 was applied to the Form 5329 10-percent
additional tax liability recorded in the first notice of Federal
tax lien.

because they were negotiating an offer-in-compromise when the lien was filed.

The Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for Federal taxes upon demand for payment and failure to pay. Sec. 6321; Iannone v. Commissioner, 122 T.C. 287, 293 (2004). The lien arises automatically on the date of assessment and continues until the tax liability is satisfied or the statute of limitations bars enforcement. Sec. 6322; Iannone v. Commissioner, supra at 293. The notice of Federal tax lien is filed with the appropriate State office or other government office in order to validate the lien against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. See sec. 6323(a); Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx. 800 (9th Cir. 2003).

The notice of Federal tax lien was not filed prematurely. Petitioners self-assessed income tax liabilities for the years at issue. Petitioners were given notice and demand for payment for each year at issue. The second notice of Federal tax lien was filed on May 12 and mailed to petitioners on May 13, 2005. Filing of the Federal tax lien took place after assessment and notice and demand for payment, and at each step petitioners were properly notified. The record also indicated that petitioners' offer-in-compromise was returned before the second notice of

Federal tax lien was issued.  Consequently, petitioners were not negotiating an offer at the time the lien was filed.

The Commissioner "may" withdraw a Federal tax lien pursuant to section 6323(j)(1), but respondent's failure to do so in this case is not an abuse of discretion.  See Crisan v. Commissioner, T.C. Memo. 2007-67; Ramirez v. Commissioner, T.C. Memo. 2005-179; Stein v. Commissioner, T.C. Memo. 2004-124.

For the foregoing reasons, this Court finds respondent did not abuse his discretion in sustaining the filing of the second notice of Federal tax lien, and respondent may proceed with collections.

In reaching these holdings, the Court has considered all arguments made and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.