T.C. Memo. 2011-32

UNITED STATES TAX COURT

GARY STEVEN COVINGTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17624-09L.        Filed February 2, 2011.

Gary Steven Covington, pro se.

<u>David M. McCallum</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The IRS notified the petitioner, Gary
Steven Covington, that it intended to collect his 1995 and 1996
income tax liabilities by levy.  Mr. Covington requested a
hearing with the IRS Appeals Office.  On June 25, 2009, the
Appeals Office made a collection determination under section 6330

of the Internal Revenue Code, as amended.[1]  Covington challenged the determination by filing a timely petition with this Court. We sustain the determination of the Appeals Office.

FINDINGS OF FACT

1.   <u>Before the IRS Proposed the Levy in 2008</u>

Covington failed to file his federal income tax returns for the years 1995 and 1996.  In 1999, the respondent (whom we refer to as the IRS) sent Covington a notice of deficiency for 1995 and 1996.  Instead of filing a Tax Court petition, Covington stamped each page of the notice "REFUSED FOR FRAUD F.R.C.P. 9(b)" and sent the notice back to the IRS accompanied by a letter filled with frivolous theories.  He claimed that his name was actually "Gary Steven., Covington", and that the deficiency notice, addressed to "Gary S. Covington", was therefore invalid.  He enclosed an affidavit in which he swore that he had never been to the Virgin Islands, that he was not an American citizen, and that he claimed allegiance to Jesus Christ.  (He signed the affidavit "Gary Steven., Covington".)  The IRS assessed all the taxes and penalties determined in the deficiency notice.  In 2002, it filed the tax lien that had arisen from the assessment.  A notice of the filing of the lien gave Covington a right to request a collection hearing with the IRS Appeals Office.  See sec.

---

[1]All section references are to the Internal Revenue Code, as amended.

6320(a)(1), (3)(B), (b)(1). Covington requested a hearing. The Appeals Office sustained the filing of the tax lien. Covington appealed this determination to the Tax Court. In 2003, the Tax Court sustained the determination in an order and decision.

2.  The Proposed Levy and Subsequent Proceedings

On September 29, 2008, the IRS notified Covington by mail that it intended to collect the unpaid taxes and penalties for 1995 and 1996 by levy. Covington had a right to request another hearing. Sec. 6330(a)(1), (3)(B), (b)(1). In his request, Covington said that he wanted the Appeals Office to consider entering into an installment agreement or an offer-in-compromise. His request was accompanied by a 17-point list of generic complaints, disclaimers, and demands, which he had copied from the internet. In point 3 of the attachment, Covington claimed that "Collection actions" were inappropriate, were intrusive, and would place an undue hardship on him. In point 9, Covington explained that he wished to audio record the hearing. In point 10, Covington purported to withdraw any frivolous arguments. However, in point 6, Covington claimed that he had never received a notice of deficiency, even though he had received the notice of deficiency in 1999 and returned it to the IRS.

On November 24, 2008, Deborah Foote of the IRS mailed a letter to Covington acknowledging that the IRS had received his request for a collection hearing. Foote stated that Covington's

request had been forwarded to the Appeals Office.  Foote asserted that the balance due for the tax years 1995 and 1996 was $38,640.90, an amount that included penalties and interest figured to December 24, 2008.

On December 8, 2008, Covington replied to Foote's letter. He argued that he did not owe any taxes for 1995 and 1996. Covington asserted that, as a member of the private sector during 1995 and 1996, he did not have any taxable income for those years.

On January 26, 2009, Cheryl Wakefield, an IRS settlement officer attached to the Appeals Office, sent a letter to Covington.  The letter explained that the Memphis Campus of the Appeals Office had received his case on December 16, 2008.  The letter promised that the Appeals Office would attempt to contact Covington as soon as possible.

On February 23, 2009, Wakefield sent another letter to Covington.  Wakefield stated that she had scheduled a telephone conference call with Covington for March 16, 2009, at noon and asked him to notify her within 14 days if the time was inconvenient or if he wished to have the conference by correspondence.  She explained that Covington could not challenge the tax liabilities because he had had a previous opportunity to do so.  The letter stated that the issues raised in Covington's request for a hearing were frivolous, that the Appeals Office did

not provide a face-to-face conference to discuss frivolous issues, and that Covington would be allowed a face-to-face conference on any nonfrivolous issues if he raised a nonfrivolous issue within 14 days from the date of the letter. As to Covington's request to audio record the hearing, Wakefield explained that audio recording was allowed by the Appeals Office only in face-to-face conferences, and that Covington was not (as yet) entitled to a face-to-face conference. Wakefield stated that she could not consider alternatives to collection action, such as installment agreements and offers-in-compromise, unless Covington submitted a collection-information statement within 14 days; i.e., by March 9, 2009. By the same deadline, Covington would also need to file any overdue federal tax returns. In particular, Wakefield stated that Covington would need to file his income-tax return for 2007.

On March 6, 2009, Covington wrote a letter to Wakefield responding to her letter. Covington stated that he did not wish to have a telephone conference with Wakefield. Covington demanded a face-to-face hearing instead. He stated that at the face-to-face hearing he planned to discuss procedural irregularities, his liability for penalties, and alternatives to collection. However, Covington did not file any overdue federal tax returns or send Wakefield a collection-information statement.

On May 20, 2009, Wakefield sent Covington a letter stating that she had not received the collection-information statement that she had requested in her February 23, 2009, letter. She warned Covington that a determination would be made using whatever information Covington had already provided. If Covington wished to provide more information, he could do so within 14 days; i.e., by June 3, 2009.

On June 3, 2009, Covington responded to Wakefield's May 20, 2009, letter. Covington explained that he did not send Wakefield a collection-information statement because, as a member of the private sector, he was exempt from federal income tax.

On June 25, 2009, the Appeals Office made a collection determination sustaining the proposed levy. The determination stated that Covington had received a notice of deficiency for 1995 and 1996 and that therefore Covington was barred from contesting the amounts of the tax liabilities. The determination also stated that Covington's failure to provide financial information prevented the Appeals Office from considering collection alternatives. Covington filed a petition with this Court challenging the determination of the Appeals Office. At the time he filed his petition, he was a resident of North Carolina.

OPINION

1. The Appeals Office's Determination Was Not an Abuse of Discretion.

The Tax Court has jurisdiction to review the Appeals Office's determination to sustain the proposed levy to collect Covington's unpaid 1995 and 1996 income-tax liabilities. See sec. 6330(d)(1). Where the existence and amount of the underlying tax liability is not properly at issue, we review the determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000). In his brief, Covington essentially abandoned any challenges to the existence and amounts of his underlying tax liabilities. Therefore, we review the determination for abuse of discretion.

Section 6330(c)(1) requires the Appeals Office to verify that "the requirements of any applicable law or administrative procedure have been met." See also sec. 6330(c)(3)(A). This verification must be done even if the taxpayer does not request it. Hoyle v. Commissioner, 131 T.C. 197, 202-203 (2008). The record reflects that Wakefield (who was attached to the Appeals Office for these purposes) had determined that (1) the IRS assessed the taxes following Covington's failure to respond to the notice of deficiency, (2) the IRS timely mailed a notice and demand for payment to Covington at his last known address, (3) unpaid balances for both years were due, (4) the IRS notified Covington of its intent to levy, and (5) the IRS notified

Covington of his right to a levy hearing. We conclude that the Appeals Office made the verification required by section 6330(c)(1). See Ron Lykins, Inc. v. Commissioner, 133 T.C. 87, 96-97 (2009).

Section 6330(c)(3)(B) required the Appeals Office to consider any challenges by Covington to the appropriateness of collection actions. See also sec. 6330(c)(2)(A)(ii). In addition, section 6330(c)(3)(C) required the Appeals Office to consider whether the levy balanced the need for the efficient collection of taxes with Covington's concern that the collection action be no more intrusive than necessary. Covington never put forward any plausible challenge to the appropriateness of the levy. The Appeals Office determined that the levy balanced the need for the efficient collection of taxes with Covington's concern that the collection action be no more intrusive than necessary. We are satisfied that the Appeals Office appropriately considered Covington's generic challenge to the appropriateness of the levy and that it appropriately considered whether the levy balanced the need for the efficient collection of taxes with Covington's concern that the collection action be no more intrusive than necessary.

Covington stated in his request for a hearing that he wished to discuss collection alternatives. However, he did not submit a collection-information statement or file a 2007 tax return.

Under these circumstances, the Appeals Office did not abuse its discretion in not considering collection alternatives. See Orum v. Commissioner, 123 T.C. 1, 13 (2004) (decision to reject installment agreement was not abuse of discretion when taxpayer failed to timely submit financial information), affd. 412 F.3d 819, 821 (7th Cir. 2005); Rodriquez v. Commissioner, T.C. Memo. 2003-153 (decision not to accept offer-in-compromise from taxpayer who did not file all required tax returns was not abuse of discretion).

The Appeals Office did not grant Covington a face-to-face hearing. Section 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs., provides that a face-to-face hearing concerning a collection alternative is not required unless the taxpayer would be eligible for the alternative. As explained above, Covington never demonstrated that he was eligible for the collection alternatives that he proposed to discuss. Therefore, he did not have a right to a face-to-face hearing.

2. <u>Covington Filed His Tax Court Petition and Maintained This Lawsuit Primarily for Delay</u>.

The IRS moved for the imposition of sanctions under section 6673(a)(1). If a taxpayer institutes or maintains Tax Court proceedings primarily to delay collection, the Tax Court may require a taxpayer to pay the United States up to $25,000.

Id.  We believe that Covington filed and maintained this lawsuit primarily to delay collection, not to assert any legitimate arguments.  We shall impose a penalty under section 6673 of $5,000.

    To reflect the foregoing,

                                An appropriate order and
                                decision will be entered.