T.C. Memo. 2008-129

UNITED STATES TAX COURT

MICHAEL E. GRAHAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8147-07L.                    Filed May 6, 2008.

<u>Jerry W. Neagle</u>, for petitioner.

<u>Susan K. Greene</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  This collection review case is before the
Court on respondent's motion to dismiss for lack of jurisdiction.
Respondent contends that this Court lacks jurisdiction because
respondent issued no notice of determination to petitioner for
the taxable years 1985, 1986, 1995, 1997, 1998, or 1999 (years in
issue) or with respect to petitioner's outstanding liabilities

for section 6672[1] trust fund recovery penalties for the tax periods ending March 30, June 30, or September 30, 2002 (penalty periods in issue; collectively periods in issue).[2] Petitioner counters that he was improperly denied a collection hearing under section 6320(b) (collection hearing) and asserts that he is entitled to a review of respondent's denial. Alternatively, petitioner argues that we should (1) find respondent issued a valid determination in response to his timely request for a collection hearing, and (2) deny respondent's motion to dismiss for lack of jurisdiction on that ground.

Because we find that petitioner failed to timely request a collection hearing after respondent, on or about April 4, 2002, sent petitioner a section 6320 notice (section 6320 notice) of Federal tax lien (NFTL) filing under section 6323, we will grant respondent's motion as to the unpaid taxes assessed before that date.

However, we also find that petitioner timely requested but was denied a collection hearing in response to a section 6320 notice mailed on or about May 12, 2006, insofar as that section

---

[1] All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] While the decision letter concerning petitioner's equivalent hearing under secs. 6320 and/or 6330 included the year 1996, petitioner did not include 1996 among the years in dispute; therefore, it is not before us to decide.

6320 notice included unpaid tax liabilities assessed after April 4, 2002. Therefore, we will dismiss this case as to the unpaid taxes assessed after that date on the ground that respondent improperly denied petitioner's collection hearing request and failed to issue a valid determination on the issues petitioner raised regarding those unpaid taxes.

## Background

At the time he petitioned the Court, petitioner resided in Houston, Texas.

Some of the facts pertinent to this case are set forth in detail in Graham v. Commissioner, docket No. 7298-95 (Graham I)[3], and are recited here insofar as relevant to our disposition of the instant motion.

On February 9, 1995, respondent issued a notice of deficiency to petitioner and his wife, Rosalind L. Graham, for the years 1984 through 1986. Petitioner and Ms. Graham timely filed a petition for redetermination. On June 17, 2004, the Court entered an order and decision holding that for the tax year 1985 there was no deficiency and that petitioner and Ms. Graham had made an overpayment of $80,805.60 because of an amount paid in 1993 that had been applied to 1985. However, the Court also

---

[3]The decision in Graham v. Commissioner, docket No. 7298-95, enforced a stipulation of settlement by the parties. Petitioner later filed a motion to withdraw the stipulation, which was denied.

determined that petitioner (and, as to one penalty, Ms. Graham jointly) was liable for additions to tax and/or penalties totaling $20,722, and an additional penalty of 50 percent of the statutory interest on $10,285 under section 6653(b).

For tax year 1986 the Court held that petitioner was jointly liable with Ms. Graham for a deficiency of $105,082 and an addition to tax under section 6661 of $24,983.  The Court also determined that petitioner was individually liable for a deficiency of $17,382, additions to tax and/or penalties of $138,076, and an additional penalty of 50 percent of the statutory interest due on $116,458 under section 6653(b).[4]

After an appeal to the Court of Appeals for the Fifth Circuit, Graham v. Commissioner, 134 Fed. Appx. 704 (5th Cir. 2005), this Court issued a final decision on February 2, 2006, identical to the order and decision entered on June 17, 2004, except that Ms. Graham was relieved of joint liability for 1985 (the Graham I decision).

The First Notice (2002)

On or about April 4, 2002, respondent mailed a section 6320 notice (the first notice) to petitioner via certified mail at his

---

[4] Because 1984 is not a year in issue in this case, references to 1984 in the Graham I decision are omitted.

address on Walden Lane in Houston, Texas (the Walden address).
The first notice showed the following unpaid tax liabilities:[5]

| Type of Liability | Year |
| --- | --- |
| Income tax | 1985 |
| Income tax | 1986 |
| Income tax | 1995 |
| Income tax | 1997 |
| Income tax | 1998 |
| Income tax | 1999 |

The first notice required petitioner to request a hearing by May 8, 2002. While petitioner was living at the Walden address at the time, petitioner has no recollection of receiving the first notice and did not request a collection hearing in 2002.

Respondent filed an NFTL with the county clerk of Harris County, Texas, on April 5, 2002.

The Second Notice (2005)

On July 20, 2005, respondent mailed a section 6320 notice to petitioner at an address on Candlewood Park Lane in Katy, Texas (the Candlewood address). On the same date, respondent mailed an identical section 6320 notice to Ms. Graham at the same address, which was returned as unclaimed (collectively, the second

---

[5] For simplicity, any liabilities relating to periods not addressed in the petition have been omitted from the descriptions of the sec. 6320 notices and NFTLs because they are not before the Court.

notice). The second notice informed petitioner of a second NFTL filing.

The second notice showed the following unpaid tax liabilities:

| Type of Liability | Period |
|---|---|
| Income tax | 1985 |
| Income tax | 1986 |
| Income tax | 1995 |
| Income tax | 1997 |
| Income tax | 1998 |
| Income tax | 1999 |
| Sec. 6672 penalty | 3/31/2002 |
| Sec. 6672 penalty | 6/30/2002 |
| Sec. 6672 penalty | 9/30/2002 |

The second notice required petitioner to request a collection hearing by August 25, 2005.

Respondent filed two NFTLs with the county clerk of Fort Bend County, Texas, on July 26, 2005. In addition to amounts that respondent had assessed before issuing the first notice and filing the NFTL in 2002, the NFTLs included the following assessments:

| Type of Liability | Period | Date Assessed | Unpaid Balance |
|---|---|---|---|
| Income | 1985 | 10/22/2004 | $86,757.38 |
| Income | 1985 | 10/22/2004 | 149,442.86 |
| Income | 1986 | 10/22/2004 | 899,909.97 |

|  |  |  |  |
|---|---|---|---|
| Sec. 6672 penalty | 3/31/2002 | 9/29/2003 | 25,301.95 |
| Sec. 6672 penalty | 6/30/2002 | 9/29/2003 | 30,865.08 |
| Sec. 6672 penalty | 9/30/2002 | 9/29/2003 | 6,529.22 |

Petitioner moved from the Candlewood address to an address on Boheme Drive in Houston, Texas (the Boheme address) on or before May 31, 2005.  He filed a change of address form with the U.S. Postal Service (USPS) with instructions to begin forwarding mail from the Candlewood address to the Boheme address on June 27, 2005.

Petitioner received the second notice on August 30, 2005. It presumably had been forwarded pursuant to petitioner's change of address form.  On August 31, 2005, respondent received a request for a collection due process hearing from petitioner and Ms. Graham regarding 1984, 1985, 1986 and the penalty periods in issue.  This request was not timely.[6]  After learning from one of respondent's revenue officers that the hearing request was not timely and therefore petitioner and Ms. Graham would not be entitled to a collection hearing, petitioner withdrew his request.[7]

---

[6] The parties dispute when the 30 days in sec. 6320(a)(3)(B) begin to run.  However, under either party's interpretation the request for a sec. 6320 hearing was not timely.

[7] Petitioner's counsel submitted the withdrawal solely on behalf of petitioner.

The Third Notice (2006)

On or about May 12, 2006, respondent mailed at least two section 6320 notices (collectively, the third notice) to petitioner at the Boheme address notifying him of NFTLs filed against him regarding the following unpaid tax liabilities:

| Type of Liability | Year |
|---|---|
| Income tax | 1985 |
| Income tax | 1986 |
| Income tax | 1995 |
| Income tax | 1997 |
| Income tax | 1998 |
| Income tax | 1999 |

Respondent claims to have sent petitioner on or about the same date a section 6320 NFTL regarding the penalty periods in issue. While respondent has not produced a copy of this section 6320 notice, the request for a collection hearing that petitioner mailed to respondent on June 15, 2006, discussed below, does include the unpaid section 6672 penalties for the penalty periods in issue. Furthermore, petitioner does not claim that he did not receive a third notice including the section 6672 penalties. Therefore, for purposes of deciding whether to grant respondent's motion, we infer that the third notice included notices of liens filed for all of the taxes and periods in issue.

About the same time, respondent mailed to petitioner and Ms. Graham notices of additional Federal tax lien filing regarding taxes for which respondent had already sent NFTLs.

On June 12 and 13, 2006, several NFTLs regarding all of the types of taxes and periods in issue, including the penalty periods in issue, were recorded in Harris County, Texas.

The third notice informed petitioner that he was required to request a collection hearing by June 19, 2006. On June 15, 2006, petitioner requested an in-person collection hearing to appeal the collection actions taken regarding liabilities for all of the periods in issue. The hearing request stated that petitioner was not contesting the Court's Graham I decision in any way, but he claimed that respondent's NFTLs did not conform to the liabilities listed in the Graham I decision (the nonconformance issue).

An Appeals officer scheduled a telephone conference call for March 1, 2007. Petitioner did not object to receiving a telephone conference in lieu of a face-to-face hearing. Relying on the June 19, 2006, deadline for requesting a collection hearing provided in the section 6320 notice that addressed the income tax liabilities, the Appeals officer notified petitioner that his request was timely as to his income tax liabilities for the following years: 1985, 1986, 1995, 1996, 1997, 1998, and 1999. Therefore, after the collection hearing the Appeals

officer intended to issue a determination letter regarding those years and a decision letter for the penalty periods for which the hearing request was not timely; i.e., the penalty periods in issue.

Petitioner spoke with the Appeals officer at the scheduled date and time and explained that he disagreed with the liabilities shown on the NFTLs, but he wished to postpone the hearing until after respondent's collection officers had time to make some adjustments. According to the case activity record, an Internal Revenue Service (IRS) employee tried to zero out petitioner's account for 1985 as a result of the Graham I decision but was apparently unsuccessful.[8] The Appeals officer did not make any additional notes in the case activity record regarding petitioner's 1985 account.

Upon researching respondent's internal records, the Appeals officer discovered that respondent had previously mailed the first and second notices, which together covered all of the same types of liabilities and tax periods as the third notice, to petitioner in 2002 and 2005, respectively. Accordingly, the Appeals officer determined that petitioner was not entitled to a

---

[8] The case activity report notes are not clear, but they indicate that the IRS employee tried to clear petitioner's account by posting a code indicating that the time for collection had expired instead of simply clearing the balance. However, this was most likely unsuccessful because the time for collection had not yet expired.

collection hearing because he failed to request one in response to the first or second notice. The Appeals officer also noted in the case activity record that petitioner had had a prior opportunity to raise the nonconformance issue and therefore could not raise it during an equivalent hearing. Accordingly, the only remaining issues the Appeals officer would entertain would be collection alternatives.

In a March 12, 2007, letter the Appeals officer explained that petitioner had had a prior opportunity to raise the nonconformance issue; therefore he could not raise it during the equivalent hearing. The Appeals officer scheduled another telephone conference for March 28, 2007, to discuss collection alternatives. While petitioner never raised the issue of collection alternatives, the Appeals officer told petitioner that before the telephone conference he would need to submit copies of expenses listed on an enclosed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and bank statements and corresponding canceled checks for the past 6 months. The Appeals officer informed petitioner that if he did not call and/or provide the financial information, the case would be closed. Petitioner did not call at the scheduled time or provide any of the financial information requested. Petitioner explained in his pretrial filings that he never sought or wanted an equivalent hearing.

In an April 4, 2007, decision letter the Appeals officer stated that while petitioner's collection hearing request had not been filed within the time prescribed under section 6320 and/or 6330, she had given him an equivalent hearing. She concluded that all legal and procedural requirements had been met regarding the filing of the NFTLs and that the filing of the NFTLs was sustained.

The Appeals officer acknowledged that petitioner had raised the nonconformance issue and reprinted petitioner's argument in the decision letter as follows:

> The taxpayer disputes the amount of the liabilities reflected in the Notice(s) of Federal Tax lien * * *. The 1986 and 1986 income tax issues are the subject matter of the Order and decision entered by the Tax Court in Docket # 7298-95 (the decision document). * * * The Service has not followed the Decision Document in * * * [filing the Notice(s) of Federal Tax Lien].

However, the Appeals officer would not address this argument because she believed petitioner had had a prior opportunity to raise the nonconformance issue.

On April 10, 2007, petitioner filed a petition with the Court seeking review of respondent's denial of his requested relief with respect to the NFTLs.

On June 1, 2007, respondent filed a motion to dismiss for lack of jurisdiction on the grounds that (1) no notice of determination under section 6320 was sent to petitioner, and (2)

the Appeals Office never made a determination with respect to any of the periods in issue.

## Discussion

The Tax Court is a court of limited jurisdiction, and we may exercise that jurisdiction only to the extent authorized by Congress. Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The Court's jurisdiction under sections 6320 and 6330 depends upon the issuance of a valid determination and the filing of a timely petition for review. See Orum v. Commissioner, 123 T.C. 1, 8 (2004), affd. 412 F.3d 819 (7th Cir. 2005); Sarrell v. Commissioner, 117 T.C. 122, 125 (2001); Moorhous v. Commissioner, 116 T.C. 263, 269 (2001); Offiler v. Commissioner, 114 T.C. 492, 498 (2000); see also Rule 330(b). In the absence of a determination, this Court lacks jurisdiction.

Generally, a determination comes in the form of a notice of determination following a collection hearing. Offiler v. Commissioner, supra at 498. If a taxpayer receives a section 6320 notice and fails to timely request a collection hearing, the taxpayer generally receives an equivalent hearing that concludes when an Appeals officer issues a decision letter. Craig v. Commissioner, 119 T.C. 252, 258-259 (2002). While a decision letter generally includes the same information as a notice of determination, a taxpayer is usually not entitled to judicial

review of a decision letter.  Kennedy v. Commissioner, 116 T.C. 255, 261 (2001); cf. Craig v. Commissioner, supra at 259.

A predicate for the issuance of a notice of determination over which we have jurisdiction is the delivery of a section 6320 notice to the taxpayer in accordance with section 6320(a)(2).  See also sec. 6330(a)(2)(C).  Where the Court determines that it lacks jurisdiction because the taxpayer did not receive a valid determination, the basis of dismissal may depend on whether the Secretary mailed a section 6320 notice to the taxpayer's last known address or otherwise served the notice in the manner prescribed by section 6320(a)(2).  Kennedy v. Commissioner, supra at 261.  If the Secretary fails to mail a section 6320 notice to the taxpayer at his last known address or otherwise comply with section 6320(a)(2), we dismiss the case on the ground that the purported section 6320 notice is invalid.  Id.; Kennedy v. Commissioner, T.C. Memo. 2008-33; Buffano v. Commissioner, T.C. Memo. 2007-32.  If the Secretary mails the section 6320 notice to the taxpayer at the correct address, we dismiss the case on the ground that the taxpayer failed to timely request a collection hearing.  Pickell v. Commissioner, T.C. Memo. 2008-60.

However, where the taxpayer timely requests a collection hearing but receives an equivalent hearing concluded by a decision letter, we have held that in certain circumstances the Court may treat the decision letter as a valid determination and

review the decision letter under section 6330(d). Craig v. Commissioner, supra at 259. These circumstances arise where the Appeals officer, in a mistaken belief that the hearing request was untimely, conducts an equivalent hearing where she considers the same issues that she would have considered at a collection hearing and then issues a decision letter that is similar in content to a notice of determination but is titled "decision letter" and contains a statement that the taxpayer is not entitled to judicial review. Id.

When the Secretary mails multiple section 6320 notices to a taxpayer, the taxpayer's right to a collection hearing is generally tied to the first valid section 6320 notice the taxpayer receives with respect to the taxable period to which the unpaid tax included on the section 6320 notice relates. Inv. Research Associates, Inc. v. Commissioner, 126 T.C. 183, 190 (2006); Pragasam v. Commissioner, T.C. Memo. 2006-86; sec. 301.6320-1(b)(2), A-B1, Proced. & Admin. Regs. If the first notice is invalid because it was not mailed to the taxpayer's last known address, the next valid section 6320 notice will be treated as a substitute section 6320 notice and will entitle the taxpayer to a collection hearing. See sec. 301.6320-1(a)(2), A-A12, Proced. & Admin. Regs. If, after the first valid section 6320 notice is mailed, the Commissioner makes an assessment for a different type of tax or a different period, or makes an

additional assessment of tax of the same type and for the same period (not including an assessment of accruals of interest or penalties on a tax previously assessed), the taxpayer is entitled to a new section 6320 notice and a collection hearing on the new assessments. Sec. 301.6320-1(d)(2), A-D1, Proced. & Admin. Regs.

Respondent argues that the Court lacks jurisdiction because the Appeals Office never made a determination for purposes of section 6330(d)(1) with respect to respondent's lien actions for any of the periods in issue. While petitioner received an equivalent hearing and a decision letter, respondent argues that the decision letter was not a valid determination.

Petitioner raises six arguments as to why we should deny respondent's motion to dismiss: (1) All of the NFTLs are invalid because their accompanying section 6320 notices were mailed before the NFTLs were recorded; therefore the section 6320 notices associated with those NFTLs are also invalid; (2) some of the NFTLs are also invalid because they were filed in the wrong location; therefore the section 6320 notices associated with those NFTLs are also invalid; (3) assessment of the tax liabilities for 1985 and 1986 before the Court's Graham I decision was final under section 7481(a) was improper; (4) the assessments of income tax for 1985 and 1986 are inconsistent with the Court's Graham I decision; (5) the first and second notices were not mailed to the correct address; and (6) six of the

assessments were made after the first notice was mailed; therefore, petitioner's failure to request a collection hearing after the first notice does not preclude his entitlement to a collection hearing as to liens arising from those new assessments.

Petitioner claims that his first two arguments, the alleged invalidity of the NFTLs, are relevant to our decision because he believes that if an NFTL is a nullity for purposes of section 6323, it does not activate the hearing notice provisions of section 6320(a). Therefore, petitioner would not be foreclosed from obtaining a collection hearing because of his failure to timely request one after receiving the first or second notice because those section 6320 notices were invalid.[9]

As discussed above, the validity of a section 6320 notice may be relevant to the Court's determination of the proper grounds for dismissal of a case over which we lack jurisdiction. However, nothing in section 6320(a) indicates that the validity of a section 6320 notice depends upon the validity of the related NFTL, and petitioner cites no authority to support his position.

To the extent that petitioner attacks the validity of the section 6320 notices on the ground that section 6320(a)(2)

---

[9] If we were to accept petitioner's argument, the third sec. 6320 notice would also be invalid. However, because we reject petitioner's argument, we need not address any new issues this would raise.

requires a section 6320 notice to be mailed after the NFTL is recorded, we reject this argument as well.

Section 6320(a)(2) provides that the Secretary shall notify the taxpayer of the filing of an NFTL "not more than 5 business days after the day of the filing of the notice of lien."  Nothing in the statute, the accompanying regulations, or the legislative history indicates that the Secretary is prohibited from notifying a taxpayer of the filing of an NFTL before the NFTL is actually recorded.  To the contrary, we rejected this argument in Golub v. Commissioner, T.C. Memo. 2008-122.  See also Muldavin v. Commissioner, T.C. Memo. 2002-182.  To read such a requirement into section 6320(a)(2) would be of no benefit to taxpayers, who presumably would prefer to be notified as early as possible that NFTLs have been or will be filed against them.  Such a requirement would also place an unnecessary administrative burden on the Secretary to ensure that section 6320 notices are issued within a particular 5-day window, especially since the Secretary may not know the exact date that an NFTL will be recorded in the State and local clerks' offices.

Petitioner's third argument, that respondent assessed the liabilities for 1985 and 1986 before those liabilities were finally determined in Graham I, is irrelevant to the question of the Court's jurisdiction.  It is a matter that should be raised during a collection hearing, not a matter that we may consider to

determine whether petitioner was entitled to or received a collection hearing.

Petitioner's fourth argument, that the assessments of income tax for 1985 and 1986 are inconsistent with the Court's Graham I decision, is also a matter that should be raised during a collection hearing, and we may not consider it unless we determine that petitioner raised the issue at a collection hearing and received a determination that we have jurisdiction to review. Secs. 6320(c), 6330(d)(1); Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); sec. 301.6320-1(e), Proced. & Admin. Regs. However, we will discuss this argument briefly below for the sole purpose of determining whether petitioner received, following an equivalent hearing, a determination over which we have jurisdiction. We shall also address petitioner's remaining arguments in the context of the section 6320 notices to which they relate.

The First Notice (2002)

Petitioner claims that he has no recollection or record of receiving the first notice, suggesting that he did not receive the notice that section 6320(a) requires. However, respondent's records show that the first notice was mailed to petitioner at his last known address, and petitioner has provided us with no reason to doubt their accuracy. Petitioner does not claim that he requested a collection hearing in 2002 in response to the

first notice within 30 days as prescribed by section 6320(a)(3)(B).

We find that respondent complied with the requirement of section 6320(a) to mail a section 6320 notice to petitioner at his last known address, and petitioner failed to timely request a collection hearing. See Pragasam v. Commissioner, T.C. Memo. 2006-86 (finding that testimony from a taxpayer claiming that he did not receive section 6320 notices was insufficient to overcome the Commissioner's evidence that section 6320 notices were properly mailed to the taxpayer's last known address). Therefore, we will grant respondent's motion to dismiss as to the unpaid taxes included on the first notice.

The Second Notice (2005)

While petitioner is foreclosed from challenging respondent's collection activities related to unpaid taxes assessed before April 4, 2002, the date of the first notice, we still must consider whether petitioner may challenge respondent's collection activities related to the unpaid taxes respondent assessed after issuing the first notice. Respondent assessed section 6672 penalties for the penalty periods in issue on September 29, 2003, and assessed additional unpaid income tax liabilities for 1985 and 1986 on October 22, 2004 (collectively, the new assessments).

Petitioner was entitled to a new section 6320 notice and another opportunity to request a collection hearing with respect

to the new assessments to the extent they included unpaid taxes that were not listed on the first notice. Sec. 6320(b)(2); sec. 301.6230-1(d)(2), A-D1, Proced. & Admin. Regs. Because petitioner did not timely request a collection hearing after receiving the second notice, we must decide whether respondent mailed the second notice to petitioner's last known address. That decision will determine whether petitioner lost his entitlement to a collection hearing regarding the new assessments. See sec. 6320(b)(2); Inv. Research Associates, Inc. v. Commissioner, 126 T.C. at 190; sec. 301.6320-1(b)(1) and (2), Proced. & Admin. Regs. Petitioner argues that the second notice was not mailed to his last known address because it was mailed on July 20, 2005, to the Candlewood address, but respondent should have updated his records to reflect that petitioner was residing at the Boheme address at that time.[10]

Section 6320(a)(2) provides that a section 6320 notice must be:

>     (A) given in person;

>     (B) left at the dwelling or usual place of business of such person; or

>     (C) sent by certified or registered mail to such person's last known address * * *

---

[10] As discussed above, we reject petitioner's other challenges to the validity of the second sec. 6320 notice.

Section 301.6320-1(a), Proced. & Admin. Regs., cross-references section 301.6212-2, Proced. & Admin. Regs., for the definition of a taxpayer's "last known address".

Section 301.6212-2(a), Proced. & Admin. Regs., provides that a taxpayer's last known address is generally the address that appears on his most recently filed and properly processed Federal income tax return, unless the IRS is given clear and concise notification of a different address.

Section 301.6212-2(b)(2)(i), Proced. & Admin. Regs., the exception to the general rule, provides:

> The IRS will update taxpayer addresses maintained in IRS records by referring to data accumulated and maintained in the United States Postal Service (USPS) National Change of Address database * * *. * * * if the taxpayer's name and last known address in IRS records match the taxpayer's name and old mailing address contained in the NCOA database, the new address in the NCOA database is the taxpayer's last known address, unless the IRS is given clear and concise notification of a different address.

The address obtained from the NCOA database is the taxpayer's last known address until the taxpayer files a Federal tax return with a different address or the taxpayer provides the IRS with clear and concise notification of an address different from the address obtained from the NCOA database. Sec. 301.6212-2(b)(2)(ii), Proced. & Admin. Regs. The Treasury Decision accompanying this regulation explains that the IRS will receive weekly updates of the NCOA database and will update its copy of the full NCOA database with the most recent changes of address in

the weekly update.  T.D. 8939, 2001-1 C.B. 899.  However, there may be a delay of up to 2 or 3 weeks from the date a taxpayer notifies the USPS that his or her change of address is effective and the time the new address is posted to the IRS's automated master file. Id.

In the first example in section 301.6212-2(b)(3), Proced. & Admin. Regs., where the IRS mails a notice to the taxpayer a month after the taxpayer has informed the USPS of a new permanent address and in the interim the IRS has updated its records to reflect the new address in the NCOA database, the taxpayer's last known address is the new address.  But in the second example, where the IRS mails a notice 6 days after the taxpayer has informed the USPS of a new permanent address and in the interim the IRS has not updated its record of the taxpayer's address, the taxpayer's last known address is still the old address.  It may be inferred that in the second example the IRS would not have had sufficient time to process and post the new address in its records.

In determining whether the Secretary mailed a section 6320 notice to a taxpayer at his last known address, the focus of the inquiry is the information the Secretary had available to him at the time the notice was mailed.  See Broomfield v. Commissioner, T.C. Memo. 2005-148; Sargent v. Commissioner, T.C. Memo. 1992-373.  The inquiry under section 6212(b)(1) does not depend on the

taxpayer's actual address at that time. <u>Frieling v. Commissioner</u>, 81 T.C. 42, 49 (1983). Therefore, we do not consider the facts available to respondent after July 20, 2005.

Petitioner filed a change of address form with the USPS with instructions to begin forwarding mail from the Candlewood address to the Boheme address on June 27, 2005. Respondent mailed the second notice on July 20, 2005, 23 days after the USPS began to forward petitioner's mail.

We find that respondent had sufficient time to process petitioner's new address in his records before mailing the second notice; therefore, respondent failed to mail the second notice to petitioner at his last known address. The Treasury Decision accompanying section 301.6212-2, Proced. & Admin. Regs., reserved for the Commissioner up to 3 weeks of delay between the date the taxpayer notifies the USPS that his new address is effective and the date the new address is posted to the IRS's automated master file. T.D. 8939, <u>supra</u>. The regulations provide no guidance where the IRS issues a notice less than a month but more than 6 days after the taxpayer has informed the USPS of a new permanent address. Given the level of sophistication that computer technology had reached by 2005 (over 4 years after the Treasury Decision had been issued), we find that there is no reason that respondent could not have updated his records in 23 days. See

Buffano v. Commissioner, T.C. Memo. 2007-32 (citing section 301.6212-2(b), Proced. & Admin. Regs., approvingly).

The Third Notice (2006)

Petitioner argues that because the third notice was the first valid section 6320 notice he received with respect to the new assessments and he requested a collection hearing within the 30-day limit required by section 6320(a)(3)(B) and (b), his collection hearing request was timely and therefore the Appeals officer wrongfully denied his hearing request. Respondent conceded at trial that if the first and second notices had not been valid, petitioner's hearing request in response to the third notice would have been timely. Because we find that the first notice did not include the new assessments and the second notice was not mailed to petitioner's last known address, the third notice should have been treated as a substitute section 6320 notice entitling petitioner to a collection hearing on the new assessments; respondent improperly denied petitioner's request. See sec. 301.6320-1(a)(2), A-A12, Proced. & Admin. Regs.

In Craig v. Commissioner, 119 T.C. at 259, the Court stated: "Under the facts herein, where Appeals issued the decision letter to petitioner in response to his timely request for a Hearing, we conclude that the 'decision' reflected in the decision letter issued to petitioner is a 'determination' for purposes of section 6330(d)(1)." The Court reasoned that an equivalent hearing is

essentially the same as a collection hearing because the Appeals officer considers the same issues and follows the same procedures in both situations. Id. Furthermore, a decision letter is essentially the same as a notice of determination except for the difference in labels and in the statements regarding the right to judicial review. Id. at 258-259.

In Craig, the Court found that the taxpayer did in fact receive a hearing equivalent to a collection hearing and a decision letter equivalent to a notice of determination. Id. at 259. While the Appeals officer erroneously determined that the taxpayer could not challenge the underlying tax liability for one of the years in issue at the equivalent hearing, the error was harmless because the taxpayer's challenge to the underlying tax liability for that year was frivolous. Id. at 261-265. The Appeals officer considered the other issues that the taxpayer raised just as if they had been raised during a collection hearing. Id.

By contrast, petitioner did not receive a hearing equivalent to a collection hearing, and the decision letter that the Appeals officer issued to petitioner was not equivalent to a notice of determination. The Appeals officer was under the mistaken belief that petitioner had already received an opportunity to challenge the new assessments and therefore refused to consider the nonconformance issue. Had petitioner received a collection

hearing, the Appeals officer would have been required to consider all of the issues that petitioner raised. Sec. 6330(c)(2)(A). The Appeals officer should have considered the nonconformance issue during the equivalent hearing because it was a challenge to the accuracy of the assessment and of whether applicable law and procedures had been followed, which is a review required of the Appeals officer under section 6330(c)(1), and petitioner could not have raised the issue during Graham I. Nevertheless, it is clear that the Appeals officer did not consider the nonconformance issue because she mistakenly believed that petitioner was entitled only to an equivalent hearing. Presumably the Appeals officer would not have made this mistake had she known that the second notice was not mailed to petitioner's last known address and petitioner had not had a prior opportunity to raise the nonconformance issue. Therefore, the Appeals officer did not in fact consider at the equivalent hearing the issues she would have considered during a collection hearing.

While petitioner had the option to have a second conference with the Appeals officer, it is clear that the conference would have been futile. The Appeals officer told petitioner that she would not consider the nonconformance issue, and she made it clear that she anticipated that petitioner would use the second conference to discuss collection alternatives. This was not

acceptable to petitioner because he had no interest in collection alternatives and did not want an equivalent hearing. Petitioner was well acquainted with the IRS, the Tax Court, and the process of appealing the decisions of each. Understandably, he did not want to settle for an equivalent hearing from which there was no right to judicial review when he thought he was entitled to a collection hearing.

Furthermore, the decision letter issued to petitioner was not equivalent to a notice of determination because the Appeals officer did not make a determination as to the nonconformance issue. The Appeals officer reprinted in the decision letter petitioner's argument that the liens did not accurately reflect the liabilities listed in the Graham I decision; but instead of making a determination on this issue, the Appeals officer reiterated her mistaken belief that petitioner could not raise this issue.

This error was not harmless. The Graham I decision states that petitioner had no deficiency in 1985 (but actually made an overpayment), yet it appears that respondent assessed $236,200.24 for unpaid income tax liabilities for 1985 on October 22, 2004. While it is possible that respondent mistakenly assessed penalties and labeled them as income tax liabilities, there appears to be a disparity between the amount of penalties petitioner owes for 1985, $20,722 plus 50 percent of the

statutory interest due on $10,285 under section 6653(b), and the amount assessed.  Similarly, the new assessments apparently include an $899,909.97 assessment of income taxes for 1986, but according to the Graham I decision petitioner was liable for a deficiency of only $122,464.  Petitioner was also found liable for penalties of $163,059, plus 50 percent of the statutory interest due on $116,458 under section 6653(b), but we can only speculate whether the assessment for 1986 includes these penalties.  While we do not decide at this time whether respondent's collection activities for 1985 and 1986 were appropriate, this is an issue that the Appeals officer should have considered during a collection hearing and explained in a notice of determination.  However, the Appeals officer failed to do so.

Conclusion

Because we find that the first notice complied with section 6320(a) and that petitioner failed to timely request a collection hearing, we will grant respondent's motion to dismiss as to the unpaid taxes included on the first notice.

However, because we find that (1) the second and third notices contained new assessments not included on the first notice, (2) the second notice was not mailed to petitioner's last known address as required by section 6320(a)(2)(C), (3) petitioner timely requested a collection hearing after receiving

the third notice, and (4) respondent improperly denied petitioner's collection hearing request, as to the unpaid liabilities included in the new assessments we will deny respondent's motion to dismiss for lack of jurisdiction on the ground that respondent asserts; i.e., that petitioner was not entitled to a determination subject to review by this Court. Rather, we find we do not have jurisdiction because respondent improperly denied petitioner a collection hearing to review the new assessments under section 6320(b).

To reflect the foregoing,

An appropriate order and order of dismissal for lack of jurisdiction will be entered.