T.C. Summary Opinion 2012-26

UNITED STATES TAX COURT

REZA FATEHI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12143-10SL.                     Filed March 22, 2012.

Reza Fatehi, pro se.

Tabitha A. Green, for respondent.

SUMMARY OPINION

WELLS, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant

to section 7463(b),[1] the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. We must decide whether respondent's Appeals Office abused its discretion when it upheld a notice of Federal tax lien (NFTL) with respect to petitioner's 2004, 2005, and 2006 tax years (years in issue).

## Background

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of facts are incorporated in this opinion by reference and are found accordingly. At the time he filed his petition, petitioner was a resident of Georgia.

Petitioner is a self-employed electrician. Petitioner timely filed his tax returns for the years in issue, and he paid in full the amounts shown on his returns. However, the Internal Revenue Service (IRS) selected his returns for examination and during 2008 assessed additional taxes of $9,382, $10,707, and $4,281 with respect to his 2004, 2005, and 2006 tax years, respectively. With respect to all of the years in issue, the Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, respondent submitted include the entry "ADDITIONAL

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

 TAX ASSESSED BY EXAMINATION AGREED AUDIT DEFICIENCY PRIOR TO 30 OR 60 DAY LETTER".

During June 2009, petitioner prepared and submitted Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On his Form 433-A he indicated that he had very little cash on hand or in bank accounts and that he had little property of any value. However, he indicated that he had available credit of $22,000, which reflected the credit limit on his credit card. He indicated that his current monthly income was $1,931 and that his current monthly expenses totaled $2,523. Also during June 2009, petitioner submitted Form 656, Offer in Compromise, proposing to pay $1,000 in five installments. He indicated that he would borrow those funds from others.

On October 15, 2009, an IRS offer-in-compromise specialist mailed a letter to petitioner indicating that the IRS had determined that he had the ability to pay his tax liabilities in full. The letter indicated that the IRS offer-in-compromise specialist had made that determination on the basis of petitioner's past income and his "net equity in assets". The "net equity in assets" referred to in the letter is actually petitioner's credit limit on his credit card, not any equity in assets he owned. The letter also indicated that the IRS had determined that petitioner's average monthly

income was $3,500, more than the $1,931 he had reported on his Form 433-A. That determination was apparently made on the basis of petitioner's income during past years. However, during trial on April 4, 2011, petitioner testified that business is bad and that his income is not as high as it used to be. On or about November 5, 2009, petitioner sent a letter to the IRS offer-in-compromise specialist disputing the contention that he was earning an average of $3,500 per month.

On December 18, 2009, respondent filed an NFTL with respect to each of the years in issue. On December 22, 2009, respondent sent petitioner, via certified mail, a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153 petitioner checked the boxes indicating that he wanted respondent to consider an installment agreement or an offer-in-compromise.

On March 8, 2010, Settlement Officer Y.B. Crear mailed petitioner a letter scheduling a telephone conference for March 25, 2010. The letter requested that petitioner provide Ms. Crear with a completed Form 433-A within 14 days. Petitioner had already completed a Form 433-A, which he had submitted to the IRS offer-in-compromise specialist during June 2009, so he apparently failed to submit a

new Form 433-A before March 25, 2010.  Petitioner and Ms. Crear held the scheduled telephone conference on March 25, 2010 (Appeals hearing).

During the Appeals hearing petitioner stated that he wanted respondent to consider a collection alternative and referred to the earlier rejection of his offer-in-compromise by the IRS offer-in-compromise specialist.  Ms. Crear requested that petitioner update the Form 433-A that he had submitted during June 2009 to reflect information from his 2009 tax return.  She also requested that he submit a Form 12256, Withdrawal of Request for Collection Due Process or Equivalent Hearing.  Petitioner told Ms. Crear that he would not be able to submit an updated Form 433-A until after he submitted his 2009 tax return on April 15, 2010.  Ms. Crear did not indicate a deadline by which petitioner had to submit the requested forms, and during the Appeals hearing she agreed that he could wait to submit his updated Form 433-A until after he had filed his 2009 tax return on April 15, 2010.

Petitioner cannot recall whether he raised the issue of his underlying liabilities during the Appeals hearing, but the case activity report Ms. Crear submitted (case activity report) does not indicate that the underlying liabilities were raised.

After receiving the Form 12256 via fax on March 26, 2010, petitioner was apparently confused about the implications of signing it and therefore hesitated to do

so. For that reason and because Ms. Crear had agreed that he could wait until after he filed his 2009 tax return to file the updated Form 433-A, he did not immediately submit either the Form 12256 or an updated Form 433-A. On April 16, 2010, a little more than two weeks after sending petitioner the Form 12256 and without attempting to contact him again, Ms. Crear determined that it was appropriate to sustain the NFTL; and according to the case activity report, she decided at that time to issue the Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). On April 27, 2010, the IRS sent petitioner, via certified mail, the notice of determination.

The notice of determination erroneously states that petitioner's "liabilities stem from self assessed returns filed with a balance due". That error is also present in the case activity report. The parties now appear to agree that the liabilities actually stem from additional assessments following respondent's examination of petitioner's returns.

After receiving the notice of determination, petitioner submitted to Ms. Crear an updated Form 433-A on May 19, 2010. On May 27, 2010, petitioner timely filed his petition with this Court.

On April 4, 2011, the instant case was recalled for trial from the calendar of the Court at Atlanta, Georgia. Petitioner testified at trial. After considering his

testimony and the other evidence in the record, we ordered respondent to consider petitioner's offer-in-compromise. On October 4, 2011, respondent submitted a status report indicating that petitioner had submitted a new offer-in-compromise and that respondent's Centralized Offer-in-Compromise Unit had rejected petitioner's offer. On October 20, 2011, the Court ordered the parties to supplement the record with the subsequent proceedings regarding the rejection of petitioner's offer-in-compromise. From those supplements to the record, we construct the following narrative.

Following the trial petitioner again submitted to respondent the Form 433-A that he had attempted to submit to Ms. Crear on May 19, 2010. On that Form 433-A he indicated that his monthly income is only $984 and that his monthly expenses exceed his monthly income. He indicated that he had almost no savings and little personal property of any value. He attached documentation of his monthly expenses to his Form 433-A. Petitioner also attached a copy of his 2010 tax return, on which he reported business income of $7,100 and an adjusted gross income of $2,129. With his Form 433-A, petitioner submitted a new Form 656 on which he proposed to settle his tax liabilities by paying a total of $625 in one initial payment of $125 and five installments of $100 each; he indicated that he would make those payments with assistance from others.

On or about July 7, 2011, Offer Specialist Joe Kennedy sent petitioner a letter asking for additional documentation of his business income and assets, among other items. On or about July 28, 2011, petitioner replied to Mr. Kennedy's letter and supplied additional documentation. Petitioner and Mr. Kennedy spoke on the phone on or about August 2, 2011, and Mr. Kennedy sent him a letter on or about August 3, 2011, asking him to let Mr. Kennedy know by August 10, 2011, whether he would amend his offer-in-compromise to pay $125 per month for 24 months (instead of $625 over five months). It is unclear whether petitioner responded to Mr. Kennedy's letter.

On August 23, 2011, Mr. Kennedy sent an email to respondent's counsel alerting her to his decision to reject petitioner's offer-in-compromise. In that email Mr. Kennedy explained that he was rejecting petitioner's offer-in-compromise because he had determined that petitioner was able to "generate an income" greater than the amount indicated on his returns or on his Form 433-A. Mr. Kennedy noted that petitioner is college educated and in good health and his business as an electrician used to generate more income than it does now. Mr. Kennedy wrote:

> The Revenue Agent that conducted the audit that created the assessments on all three of the years that are outstanding clearly recalled the circumstances surrounding his investigation. He is fully confident that Mr. Fatehi is being

paid for his services in the form of cash and not reporting such on his Form 1040's [sic]. The Revenue Agent said that the taxpayer is sending this same money overseas to his family.

Mr. Kennedy gave no indication regarding how the revenue agent came to be confident that petitioner is currently not reporting some of his income, but Mr. Kennedy apparently reached his determination to reject petitioner's offer-in-compromise on the basis of the revenue agent's apparent confidence.

On or about September 27, 2011, respondent mailed petitioner a letter notifying him that respondent had rejected his offer-in-compromise. The letter offered only a one-sentence explanation: "We have determined that acceptance of your offer would not be in the best interest of the government." Unsurprisingly, petitioner did not find that explanation helpful, and he sent Mr. Kennedy a letter on or about October 26, 2011, asking for additional explanation and disputing Mr. Kennedy's determination. On or about November 2, 2011, respondent mailed petitioner a letter informing him that respondent had received his request to appeal the determination to reject his offer-in-compromise and that it was being forwarded to the Appeals Office. On December 2, 2011, respondent's counsel faxed petitioner the email she received from Mr. Kennedy explaining his reasons for rejecting petitioner's offer-in-compromise.

## Discussion

Section 6320(a)(1) requires the Commissioner to give a taxpayer written notice of the filing of a notice of Federal tax lien upon that taxpayer's property. The notice of filing must inform the taxpayer of the right to request a hearing in the Commissioner's Appeals Office. Sec. 6320(a)(3)(B), (b)(1). Section 6330(c), (d), and (e) governs the conduct of a hearing requested under section 6320. Sec. 6320(c). At the hearing the taxpayer may raise any relevant issues including appropriate spousal defenses, challenges to the appropriateness of collection actions, and collection alternatives. Sec. 6330(c)(2)(A). The taxpayer may challenge the underlying tax liability at the hearing only if the taxpayer did not receive a statutory notice of deficiency or otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). In addition to considering issues raised by the taxpayer under section 6330(c)(2), the Appeals Office must also verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1), (3).

Where the validity of the underlying tax liability is properly in issue, the Court will review the matter de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). However, where the validity of the underlying tax is not properly in issue, the Court will review the

Commissioner's determination for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.

The Form 4340 respondent submitted indicates that petitioner agreed to the assessments of the additional taxes determined by the IRS examination. The Form 4340 is "'generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made.'" Orum v. Commissioner, 123 T.C. 1, 9 (2004) (quoting Gentry v. United States, 962 F.2d 555, 557 (6th Cir.1992)), aff'd, 412 F.3d 819 (7th Cir. 2005). At trial petitioner indicated that he did not agree with the underlying liabilities and would like to contest them. However, petitioner did not present any evidence that would give us any doubt that he agreed to the assessments of additional deficiencies. Because petitioner agreed to those assessments, he gave up his right to challenge the deficiencies and is not entitled to raise his underlying liabilities before the Appeals Office or this Court. See Aguirre v. Commissioner, 117 T.C. 324, 327 (2001); Deese v. Commissioner, T.C. Memo. 2007-362. Accordingly, we review the Appeals Office's determination for abuse of discretion.

At trial respondent's counsel contended that the issue of the rejection of petitioner's offer-in-compromise was not raised during the Appeals hearing.

However, that contention is contrary to the record. Petitioner testified that he discussed the rejection of his offer-in-compromise during the Appeals hearing. Additionally, petitioner checked the box on Form 12153, indicating that he wished to discuss an offer-in-compromise. Accordingly, we reject respondent's argument that petitioner did not raise the rejection of his offer-in-compromise at the hearing.

In reviewing the Appeals Office's determination for abuse of discretion, we review the underlying reasoning to decide whether it was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). As noted above, during the Appeals hearing Ms. Crear indicated to petitioner that he would be permitted the time to file his 2009 tax return on April 15, 2010, and that he would thereafter have time to update his Form 433-A with the numbers from his return. Not only was petitioner's request for that additional time reasonable, but Ms. Crear assented to it. Nevertheless, on April 16, 2010, and without contacting petitioner again, Ms. Crear chose to issue the notice of determination on the basis that she had not yet received the requested documentation from petitioner. Her timing contradicted representations she made to petitioner, and the record contains nothing that would explain her failure to contact him before issuing the notice of determination. Ms. Crear never evaluated the merits of petitioner's offer-in-compromise. Because we

considered Ms. Crear's failure to wait for the information requested from petitioner before proceeding with her determination arbitrary and capricious, we ordered a remand of this case to respondent's Appeals Office to consider petitioner's offer-in-compromise.

After examination of respondent's supplement to the record, it appears that the sole basis for respondent's determination to reject petitioner's offer-in-compromise is an unnamed revenue agent's bald assertion that petitioner is being paid in cash and not reporting his income. Petitioner disputes the statement of the revenue agent, and he contends that the additional liabilities stemming from the IRS examination of his returns for the years in issue were made on the basis of adjustments to his deductions, not on the basis of unreported income. Additionally, petitioner notes that respondent has provided no evidence supporting the revenue agent's statement.

It is unclear from the record on what grounds the revenue agent reached his conclusion that petitioner has unreported income, and it is unclear what, if anything, the revenue agent provided to Mr. Kennedy that led Mr. Kennedy to rely on the revenue agent's assertion. Moreover, it appears that the revenue agent has had no contact with petitioner for at least four years, leading us to question how he can be so confident of petitioner's recent failure to report his income. Suffice it to

say that we do not consider Mr. Kennedy's reliance on the revenue agent's bald assertion to constitute a sound basis in fact. Accordingly, we conclude that the Appeals Office abused its discretion when it rejected petitioner's offer-in-compromise in reliance on the revenue agent's assertion.

Additionally, we question Ms. Crear's insufficient review of petitioner's case. It was apparently so cursory that she misidentified the source of his liabilities, stating that they stemmed from self-assessments on his returns instead of from an examination. Because Ms. Crear made such a basic error, we question how thoroughly she reviewed petitioner's case. We also are troubled by the determination of the IRS offer-in-compromise specialist, when he initially reviewed petitioner's offer-in-compromise, to consider petitioner's credit card limit as "equity in assets".

On the basis of the foregoing, we hold that it was an abuse of discretion for respondent's Appeals Office to reject petitioner's offer-in-compromise. Consequently, we will remand this case to the Appeals Office to clarify the record as to what respondent's employees relied on to determine that petitioner currently has cash income that he is not reporting. On remand, we expect the Appeals Office to articulate the facts on which they based their determination to reject petitioner's offer-in-compromise. If the Appeals Office fails to do so or if we

deem the facts articulated not to constitute a sound basis in fact, we will be inclined to rule in favor of petitioner and order the NFTL withdrawn.

In reaching these holdings, we have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.