**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-101

UNITED STATES TAX COURT

REZA FATEHI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12143-10S L.                    Filed December 9, 2013.

Reza Fatehi, pro se.

<u>Tabitha Anelayne Floyd</u>, for respondent.

SUPPLEMENTAL SUMMARY OPINION

WELLS, <u>Judge</u>:  The instant case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b),[1] the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). In response to the notice of determination, petitioner timely filed a petition pursuant to section 6330(d). In our prior opinion in the instant case, Fatehi v. Commissioner, T.C. Summary Opinion 2012-26, 2012 WL 967665 (prior opinion), filed on March 22, 2012, we remanded the instant case to respondent's Appeals Office to clarify the record as to what respondent's employees relied on to determine that petitioner had unreported cash income and to articulate facts on which they based their determination to reject petitioner's offer-in-compromise. On October 26, 2012, respondent sent petitioner a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (supplemental notice of determination). We must now decide whether the Appeals Office abused its discretion when it rejected petitioner's offer-in-compromise and upheld a notice of Federal tax lien (NFTL) with respect to petitioner's Federal income tax liabilities for his 2004, 2005, and 2006 tax years (years in issue).

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended (Code) and in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Many of the underlying facts are set forth in detail in our prior opinion and are incorporated herein by reference. We summarize the factual and procedural background briefly in this opinion and make additional findings of fact based upon the parties' filings. At the time he filed his petition, petitioner was a resident of Georgia.

Petitioner is a self-employed electrician who timely filed his tax returns for the years in issue and fully paid the amounts shown on his returns. The Internal Revenue Service (IRS) selected his returns for examination and, during 2008, assessed additional taxes of $9,832, $10,707, and $4,281 for his 2004, 2005, and 2006 tax years, respectively.

During June 2009, petitioner prepared and submitted to the IRS Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, indicating that his current monthly income was $1,931 and that his current monthly expenses were $2,523. Also during June 2009, petitioner submitted Form 656, Offer in Compromise, proposing to pay $1,000 in five installments. On October 15, 2009, an IRS offer-in-compromise specialist mailed a letter to petitioner rejecting the offer and indicating that the IRS had determined

that petitioner's average monthly income was $3,500 and that petitioner could pay his tax liabilities in full.

On December 18, 2009, respondent filed an NFTL with respect to each of the years in issue. On December 22, 2009, respondent sent petitioner, via certified mail, a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153, petitioner checked the boxes indicating that he wanted respondent to consider an installment agreement or an offer-in-compromise.

Petitioner and Y.B. Crear, a settlement officer in the Appeals Office, scheduled the collection due process (CDP) hearing for March 25, 2010. During the CDP hearing, petitioner requested that Ms. Crear consider a collection alternative, including his previously submitted and rejected offer-in-compromise. Ms. Crear requested that petitioner update the Form 433-A that he had submitted during June 2009 to reflect information from his 2009 tax return, and allowed petitioner to submit his updated Form 433-A after he had filed his 2009 tax return on April 15, 2010. On April 16, 2010, not having heard from petitioner, Ms. Crear determined that it was appropriate to sustain the NFTL without attempting to

contact petitioner again. On April 27, 2010, respondent sent petitioner, via certified mail, the notice of determination.

After receiving the notice of determination, petitioner submitted to Ms. Crear an updated Form 433-A on May 19, 2010. On May 27, 2010, petitioner timely filed his petition with this Court. On April 4, 2011, the instant case was recalled for trial from the calendar of the Court at Atlanta, Georgia. After considering petitioner's testimony and the other evidence in the record, we ordered respondent to consider petitioner's offer-in-compromise.

Following the trial, petitioner again submitted to respondent the Form 433-A that he had attempted to submit to Ms. Crear on May 19, 2010. On that Form 433-A he indicated that his monthly income was only $984 and that his monthly expenses exceeded his monthly income. With his Form 433-A, petitioner submitted a new Form 656, Offer in Compromise, on which he proposed to settle his tax liabilities by paying a total of $625 in one initial payment of $125 and five installments of $100 each. On or about July 7, 2011, Offer Specialist Joe Kennedy sent petitioner a letter requesting, among other items, additional documentation of his business income and assets. On or about July 28, 2011, petitioner replied to Mr. Kennedy's letter and supplied additional documentation. Petitioner and Mr. Kennedy spoke on the phone on or about August 2, 2011, and Mr. Kennedy sent

him a letter on or about August 3, 2011, asking him to let Mr. Kennedy know by August 10, 2011, whether he would amend his offer-in-compromise to pay $125 per month for 24 months (instead of $625 over five months). It is unclear whether petitioner responded to Mr. Kennedy's letter.

On August 23, 2011, Mr. Kennedy sent an email to respondent's counsel alerting her to his decision to reject petitioner's offer-in-compromise because he had determined that petitioner was able to "generate an income" greater than the amount indicated on his returns or on his Form 433-A. Mr. Kennedy apparently based his determination to reject petitioner's offer-in-compromise on an assertion from the revenue agent that conducted petitioner's audit that petitioner was paid for some of his services in cash and was not reporting some of that income.

On or about September 27, 2011, respondent mailed petitioner a letter notifying him that Mr. Kennedy had rejected his offer-in-compromise. On October 26, 2011, petitioner sent a letter to Mr. Kennedy requesting additional explanation of his determination to reject the offer-in-compromise. On or about November 2, 2011, respondent informed petitioner that his offer-in-compromise was being forwarded to the Appeals Office. On January 6, 2012, the Appeals Office sustained Mr. Kennedy's rejection of petitioner's offer-in-compromise because there was a pending United States Tax Court case for the years in issue

and the Appeals Office cannot consider collection alternatives (e.g., an offer-in-compromise) once a case has been docketed.

On March 22, 2012, we filed our prior opinion, in which we ordered that the case be remanded to the Appeals Office to clarify the record as to what it relied on to determine that petitioner had unreported cash income and to articulate facts on which it based its determination to reject petitioner's offer-in-compromise. On March 28, 2012, we ordered respondent to offer petitioner an administrative hearing at the Appeals Office on or before May 29, 2012.

On April 9, 2012, respondent's counsel notified the Appeals Office that the case was remanded to allow the Appeals Office to conduct a supplemental hearing, review the rejection of petitioner's offer-in-compromise, and make an independent determination as to whether the offer-in-compromise should be accepted. Respondent's counsel also informed the Appeals Office that, if it again rejected petitioner's offer-in-compromise, it should "explain in detail the reasons for the rejection" and document evidence to support such a determination.

On April 16, 2012, Ms. Crear contacted petitioner to schedule a telephone conference for April 27, 2012. Ms. Crear also requested that petitioner submit, by April 25, 2012, supplemental information (including a Form 433-A, bank statements, Forms 1040, U.S. Individual Income Tax Return, for tax years 2009 to

2011, Forms 1120, U.S. Corporation Income Tax Return, for tax years 2009 to 2011, and a complete Form 433-B, Collection Information Statement for Businesses, for petitioner's business) so that she could completely review petitioner's offer-in-compromise. Ms. Crear informed petitioner that if he did not participate in the conference or respond to the letter, she would make her determination regarding his offer-in-compromise using the information available. On April 25, 2012, petitioner responded to Ms. Crear with a letter stating that some of the requested documents had been submitted with the original offer-in-compromise and were in the possession of respondent's counsel and confirming the telephone conference for April 27, 2012. Petitioner alleges that he attached some of the other requested documents to that letter.

On April 27, 2012, petitioner and the Appeals Office, represented by Ms. Crear and Rogerlyn P. Jackson, held the scheduled telephone conference. Ms. Jackson informed petitioner that she could not consider petitioner's offer-in-compromise or other collection alternatives because petitioner had not provided all of the documents requested; in fact, petitioner had submitted only his Forms 1040 for his 2009, 2010, and 2011 tax years. During the conference, petitioner was advised that collection alternatives could not be considered again if he did not provide the requested financial information. The Appeals Office then granted

petitioner an extension of time to June 18, 2012, to provide the requested financial information. Ms. Crear faxed a letter to petitioner confirming the extension of time to June 18, 2012, and informing petitioner that she could evaluate the offer-in-compromise only if petitioner submitted all of the information requested and the information was current.

On May 31, 2012, Ms. Jackson inadvertently faxed petitioner a letter stating that his case had been received by the Appeals Office for consideration. On June 7, 2012, Ms. Jackson informed petitioner that this letter was sent in error, but that he needed to provide Ms. Crear with the additional requested information by June 18, 2012. Petitioner did not submit any additional information by June 18, 2012.

On July 13, 2012, respondent notified the Court that the Appeals Office would reconsider petitioner's offer-in-compromise under more flexible terms. Moreover, respondent assigned a new settlement officer, Michael Blais, to independently analyze the offer-in-compromise. After a preliminary review of petitioner's previously submitted documents, Mr. Blais concluded that there were inconsistencies in petitioner's financial information. On July 17, 2012, Mr. Blais requested petitioner to submit by August 3, 2012, additional business bank records that would allow him to complete his review of petitioner's offer-in-compromise. Petitioner did not submit the requested records. On August 14, 2012, Mr. Blais

contacted petitioner, at which time petitioner told Mr. Blais that he would not provide any additional information to the Appeals Office.

On October 26, 2012, respondent sent to petitioner the supplemental notice of determination rejecting petitioner's offer-in-compromise of $625 and sustaining the NFTL.

## Discussion

Pursuant to section 6321, the Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for Federal taxes upon demand for payment and failure to pay. See Iannone v. Commissioner, 122 T.C. 287, 293 (2004). However, section 6320(a)(1) requires the Commissioner to give a taxpayer written notice of the filing of a notice of Federal tax lien upon that taxpayer's property. The notice of filing must inform the taxpayer of the right to request a hearing in the Commissioner's Appeals Office. Sec. 6320(a)(3)(B), (b)(1).

Section 6330(c), (d), and (e) governs the conduct of a hearing requested under section 6320. Sec. 6320(c). At the hearing, the taxpayer may raise any relevant issues including appropriate spousal defenses, challenges to the appropriateness of collection actions, and collection alternatives. Sec. 6330(c)(2)(A). The taxpayer may challenge the underlying tax liability at the

hearing only if the taxpayer did not receive a statutory notice of deficiency or otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). In addition to considering issues raised by the taxpayer under section 6330(c)(2), the Appeals Office must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1), (3).

Where the validity of the underlying tax liability is properly in issue, the Court will review the matter de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). However, where the validity of the underlying tax is not properly in issue, the Court will review the Commissioner's determination for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182. In our prior opinion, we concluded that petitioner gave up his right to challenge the deficiencies and is not entitled to raise his underlying liabilities before the Appeals Office or this Court. See Fatehi v. Commissioner, 2012 WL 967665, at *5. Accordingly, we review the Appeals Office's determination for abuse of discretion.

In reviewing the Appeals Office's determination for abuse of discretion, we review the underlying reasoning to decide whether it was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301,

320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). We do not substitute our judgment for that of the Appeals Office, and we do not decide independently whether we believe that the lien notice should be withdrawn. See id. Instead, we consider whether, in the course of making its determination, the Appeals Office (1) verified that the requirements of applicable law and administrative procedure have been met, (2) considered any relevant issue raised by the taxpayer that relates to the unpaid tax or the proposed lien, and (3) determined whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. Sec. 6330(c)(1)-(3).

In our prior opinion, we remanded the case to the Appeals Office to clarify the record and articulate facts on which it based its determination to reject petitioner's offer-in-compromise and to offer petitioner an administrative hearing on or before May 29, 2012. On April 27, 2012, petitioner and the Appeals Office held an administrative hearing.[2] On October 26, 2012, respondent sent to

---

[2]In a status report filed with the Court on November 14, 2012, petitioner inexplicably alleged that the Court-ordered administrative hearing had not been scheduled. However, in a previous report filed with the Court on June 15, 2012, petitioner acknowledged that on or about April 16, 2012, he scheduled an administrative hearing with the Appeals Office for April 27, 2012 in accordance with the Court order and that, on April 27, 2012, petitioner engaged in a telephone
(continued...)

petitioner a supplemental notice of determination indicating his decisions to reject petitioner's offer-in-compromise and sustain the NFTL and articulating reasons for his decisions.

The reason given by respondent for rejecting petitioner's offer-in-compromise was that respondent was "unable to determine the adequacy of [petitioner's offer-in-compromise] based on the lack of financial disclosure." The Appeals Office determined that petitioner's "inconsistent and incomplete records [made] it impossible to render an informed decision about a suitable collection alternative." To be eligible for a collection alternative, such as an offer-in-compromise, the taxpayer must provide required returns and provide requested financial information, including Form 433-A, to the Appeals Office. Sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs.; see also Lance v. Commissioner, T.C. Memo. 2009-129, 2009 WL 1563422, at *3-*4; Schwersensky v. Commissioner, T.C. Memo. 2006-178, 2006 WL 2456484, at *4.

_____

[2](...continued)
conference with Ms. Jackson in the Appeals Office in reference to the scheduled administrative hearing. Although a sec. 6330 hearing may consist of a face-to-face conference, a proper hearing may also occur by telephone. Barry v. Commissioner, T.C. Memo. 2011-127, 2011 WL 2260418, at *5 (citing Katz v. Commissioner, 115 T.C. 329, 337-338, (2000)); sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. Accordingly, we conclude that petitioner's allegation is meritless and that the ordered administrative hearing was scheduled for and occurred on April 27, 2012.

On April 16, 2012, Ms. Crear requested petitioner to submit, by April 25, 2012, supplemental documents and other financial information so that she could completely review petitioner's offer-in-compromise in advance of the hearing scheduled for April 27, 2012. Petitioner submitted only his Forms 1040 for his 2009, 2010, and 2011 tax years. The Appeals Office then granted petitioner an extension of time to June 18, 2012, to provide the remaining requested documents and financial information. On two separate occasions, the Appeals Office reminded petitioner in writing of the extended deadline; nonetheless, petitioner did not submit any additional information by June 18, 2012. On July 17, 2012, after petitioner's offer-in-compromise was forwarded to Mr. Blais for an independent review, Mr. Blais requested that petitioner provide by August 3, 2012, his April, May, and June 2012 business bank records so that he could determine whether petitioner was reporting an income shortfall, paying personal expenses out of a business account, or reporting expenses on his Form 433-A that were inconsistent with those on bank statements. Petitioner did not submit the records by August 3, 2012, and, when Mr. Blais called petitioner on August 14, 2012, petitioner refused to provide any additional information to the Appeals Office. The Appeals Office offered petitioner multiple opportunities to submit the requested documents and financial information; petitioner failed to cooperate with any of those requests.

Accordingly, petitioner was not eligible for a collection alternative, and we sustain respondent's determination to reject petitioner's offer-in-compromise.

Petitioner contends that he previously submitted the documents requested by the Appeals Office. Petitioner's contention is without merit. Although petitioner may have previously submitted past versions of the documents that had been requested, the Appeals Office clearly informed petitioner that current information was required to properly evaluate his offer-in-compromise. Moreover, petitioner admits that he did not submit the bank records requested by Mr. Blais because petitioner did not find it necessary to submit documents pertaining to his business, despite Mr. Blais's concerns that petitioner was misstating expenses through the use of his business account.

In his supplemental notice of determination, respondent also sustained the NFTL, which petitioner contends should be withdrawn. The Commissioner "may file NFTLs for tax periods and taxes, whether or not covered by the CDP Notice issued under section 6330". Sec. 301.6330-1(g)(2), Q&A-G3, Proced. & Admin. Regs. However, pursuant to section 6323(j), an NFTL may be withdrawn without full payment and without prejudice under the following conditions: (1) the filing of the NFTL was premature or otherwise not in accordance with administrative procedures of the IRS; (2) the taxpayer had entered into an installment agreement

under section 6159 to satisfy the tax liability for which the NFTL was imposed by means of installment payments, unless the agreement provides otherwise; (3) withdrawal of the NFTL will facilitate collection of the tax liability; (4) with the consent of the taxpayer or the National Taxpayer Advocate (NTA), the withdrawal of the notice would be in the best interest of the taxpayer (determined by the NTA or the taxpayer) and the United States. See Skidmore v. Commissioner, T.C. Memo. 2012-328, at *14-*15; sec. 301.6323(j)-1, Proced. & Admin. Regs. If the Commissioner determines conditions for withdrawal are present, the Commissioner may (but is not required to) authorize the withdrawal. Sec. 301.6323(j)-1(c), Proced. & Admin. Regs.

Petitioner contends that the NFTL should be withdrawn because he is unable to pay the outstanding Federal income tax liabilities for the years in issue and that respondent has admitted petitioner's inability to pay. We disagree. The Appeals Office has stated that petitioner's "inconsistent and incomplete records [made] it impossible to render an informed decision about a suitable collection alternative." Respondent has not admitted petitioner's inability to pay; to the contrary, respondent has asserted that respondent is unable to determine whether petitioner was able to pay. Petitioner provided no additional information or support for his contention that the NFTL should be withdrawn, nor has he shown

that any of the conditions under section 6323(j) were satisfied. Accordingly, respondent was acting within respondent's sound discretion in upholding the NFTL.

Petitioner has not advanced any argument or introduced any evidence that would cause us to conclude that the determinations to sustain the NFTL and reject petitioner's offer-in-compromise were arbitrary, capricious, or without sound basis in fact. The Appeals Office correctly precluded petitioner from challenging the underlying liabilities. Petitioner did not comply with the Appeals Office's repeated requests to submit current documents and other financial information. The Appeals Office determined that the requirements of applicable law and administrative procedure were met and concluded that the proposed collection action appropriately balanced the need for efficient collection of taxes with petitioner's concerns regarding the intrusiveness of the action. Consequently, we hold that the Appeals Office did not abuse its discretion when it issued its supplemental notice of determination rejecting petitioner's offer-in-compromise and upholding the proposed collection action.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.